Jacqueline K. BUSCH and Larry
Busch, Plaintiffs,

v.

CITY OF ANTHON, IOWA, Ron Hough-
taling, Ruth Groth, Helen Pulliam,
Richard Roark, Doug Boetger, Chris-
tine Garthright, Gregory Logan, and
Angie Jorgenson, Defendants.

No. C 00–4044–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Nov. 9, 2001.

Jay Denne, Munger, Reinschmidt & Denne, Sioux City, IA, for plaintiffs.

Michael J. Frey, Hellige, Lundberg, Meis, Erickson & Frey, Sioux City, IA, for defendants.

## MEMORANDUM OPINION AND ORDER REGARDING THE CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................881
 A. Factual Background..................................................881
 B. Procedural Background..................................................883

II. LEGAL ANALYSIS ..................................................884
 A. Standards For Summary Judgment ..................................................884
 1. Requirements of Rule 56 ..................................................885
 2. The parties' burdens ..................................................885
 B. Claims Pursuant To § 1983 ..................................................886
 1. Due process violation ..................................................886
 2. Assault and battery ..................................................886
 a. Arguments of the parties ..................................................887
 b. Applicable standard ..................................................887

 c. *Application of the standard* .................................... 890
 3. *False arrest and imprisonment* .................................... 892
 a. *Arguments of the parties* ........................................ 892
 b. *Allegations against City Defendants* .......................... 892
 c. *Applicable standards* .......................................... 893
 d. *Application of the standards* .................................... 896
 4. *Invasion of privacy* ............................................ 896
 5. *Retaliation for exercise of free speech rights* ........................ 897
 a. *Arguments of the parties* ...................................... 897
 b. *Nature of the claim* ............................................ 898
 c. *Applicable standards* .......................................... 898
 d. *Application of the standards* .................................... 899
 6. *Qualified immunity* ............................................ 900
 a. *Arguments of the parties* ...................................... 900
 b. *Applicable standards* .......................................... 900
 c. *Application of the standards* .................................... 901
 C. *Common-law Claims* ............................................ 902

III. CONCLUSION ...................................................... 904

Did the souring of relations and confrontations between a resident of a small city in Iowa and various city employees reach the point of constitutional violations and common-law torts? That is the question presented by the motion for summary judgment by the city and its employees in the resident's action involving federal constitutional claims pursuant to 42 U.S.C. § 1983 and pendent state-law claims.

## I. INTRODUCTION

### A. Factual Background

Although a ruling on a motion for summary judgment usually hinges on whether or not there are genuine issues of material fact, the court will not begin this ruling with an exhaustive discussion of the undisputed and disputed facts presented by the record. Rather, the court will begin with a discussion of the factual background sufficient to put in context the plaintiffs' claims and the parties' arguments for and against summary judgment. The court will reserve for its legal analysis the question of whether or not genuine issues of material fact preclude summary judgment on any of the plaintiffs' claims against the moving defendants.

The dramatis personae in this ruling are plaintiffs Jacqueline (Jackie) K. Busch, some time member and president of the City of Anthon Public Library Board, and her husband, Larry Busch; the "City Defendants," consisting of the City of Anthon itself, Richard Roark, the Mayor of the City, Ron Houghtaling, a police officer for the City, Ruth Groth, the City Clerk, and Helen Pulliam, the librarian of the City Library; and the "County Defendants," consisting of various Woodbury County Sheriff's Deputies. Only the City, Defendants have moved for summary judgment, so the present synopsis of the factual background to the Busches' claims focuses on the interactions between the Busches and the City Defendants.[1] The Busches contend that they had several clashes with various of the City Defendants in 1998, which they contend give rise to various constitutional and common-law claims.

1. Indeed, the County Defendants did not move for summary judgment, or participate in the briefing of the City Defendants' motion for summary judgment, and were excused from participating in the oral arguments on the City Defendants' motion for summary judgment, which took place on October 12, 2001.

In 1993, the Mayor of Anthon appointed Jackie Busch to an unpaid position on the Library Board of the City of Anthon. Jackie was elected president of that body in September of 1997. However, things did not go smoothly during 1998. In January of 1998, Jackie had a confrontation with a school teacher at the Anthon–Oto public school regarding a fund raiser for the library, and in February of 1998, there was a dispute among members of the Library Board over Jackie's purchase of a computer for the library, which Jackie and members of her family were purportedly using after normal business hours for both official and personal business.

The situation worsened on the evening of April 26 or 27, 1998, when Jackie and her son were at the library after business hours in response to a call from the librarian, Helen Pulliam, about some problems with the computer. The library is in the same building as the city offices. While Jackie and her son were attempting to correct the computer problem, they heard a loud male voice from the other side of the wall that separates the "library" portion of the building from the "city hall" portion. They then received a telephone call from Ms. Pulliam informing them that Officer Houghtaling had called her about someone being in the library after hours. Ms. Pulliam apparently suggested that Jackie and her son leave the library. Jackie called her husband to follow them home from the library, and they departed. However, apparently that same evening, Larry and Jackie returned to the city hall so that Larry could talk to Officer Houghtaling about the incident. Larry initially spoke to Officer Houghtaling while Jackie waited in their vehicle, but when Jackie eventually approached the two men, she asserts that Mr. Houghtaling began to use abusive language, told her to "get the fuck out of here," placed both of his hands on her shoulders, and shoved her backwards.

On or about April 30, 1998, Jackie and Larry Busch met Mayor Roark on the street. The parties apparently dispute whether the Busches had gone looking for Mayor Roark to complain about Officer Houghtaling's behavior, or had simply run into him. In any event, Mayor Roark took the opportunity to inform Jackie that she was being terminated from the Library Board for "inappropriate behavior." On April 29, 1998, all of the other members of the Library Board had sent a letter to Mayor Roark requesting that the City Council remove Jackie Busch from the Library Board "due to inappropriate behavior." *See* Defendant's Appendix at 21. The printed agenda of the City Council meeting for April 30, 1998, indicates that one of the matters before the Council would be "LIBRARY BOARD," *Id.* at 22, and the minutes of the meeting reflect that, after discussion, and upon recommendation of the Library Board, a motion to remove Jackie Busch from the Library Board effective April 30, 1998, carried five votes to none. *Id.* at 23. On or about May 5, 1998, Jackie Busch received a certified letter dated April 30, 1998, from Mayor Roark, the text of which stated, in its entirety, "Upon recommendation of the Library Board and action of the City Council you have been removed from the Anthon Public Library Board effective April 30, 1998." *Id.* at 24. By letter dated May 6, 1998, Jackie Busch informed the City of Anthon and the Northwest Iowa Regional Library Board that she was "resign[ing] as a member of the Board of the Anthon Public Library effective immediately." *Id.* at 25.

Jackie also contends that, on or about May 5, 1998, Mayor Roark made a complaint to the Woodbury County Sheriff's Office that Jackie was "harassing" him. She contends that, in the course of "investigating" that report, a Woodbury County Sheriff's Deputy came to her home, de-

manded to see what medications she was taking, and rifled through her medicine cabinet.

The next incident giving rise to the Busches' claims occurred on or about May 26, 1998, when Jackie went to the library to make photocopies of a letter from her attorney for an upcoming City Council meeting. While she was making her photocopies, both Helen Pulliam, the librarian, and Ruth Groth, the City Clerk, asked Jackie if she intended to pay for the copies. Jackie contends that she had not been required to pay for copies in the past and that she therefore initially indicated that she would not pay for these copies either. Helen Pulliam told Jackie that if Jackie did not pay for the photocopies, she was supposed to call 911. Jackie then had an argument with both Ms. Pulliam and Ms. Groth. At some point, Jackie called her son and asked him to bring her tape recorder to the library, but did not ask him to bring money for the photocopies. In the course of Jackie's argument with Ms. Groth, which apparently ranged beyond the photocopying issue, Ms. Groth purportedly placed both of her hands on the back door separating the library from the city offices and slammed the door onto Jackie's back. Also at some point, a 911 call was made to the Woodbury County Sheriff's Office, although it is unclear whether the call was made by Helen Pulliam or Ruth Groth. Jackie's son left the library with Jackie's photocopies and Jackie left on her bicycle without paying for the copies. Jackie contends that she had told Helen Pulliam that she had no money with her and that she had obtained Ms. Pulliam's permission to return with $2.20 for the photocopies. When Jackie returned to the library with the money approximately five to ten minutes later, she was questioned by Woodbury County Sheriff's Deputies who had arrived in response to the 911 call. These County Defendants ultimately arrested Jackie for fifth degree theft for non-payment for the photocopies, interference with official acts, and simple assault. Those charges were ultimately dismissed.

On or about November 21, 1998, Jackie backed her automobile into the front end of a vehicle owned by Lincoln Umbach at a convenience store in Anthon. Jackie was aware that Mr. Umbach had a prior confrontation with her son concerning his driving. Although Jackie contends that she inspected both vehicles and saw no damage, a confrontation ensued between Umbach and Jackie, in the course of which Jackie drove away. On December 7, 1998, when Jackie went to the Woodbury County Sheriff's Office to check on the status of an assault complaint she had made against Ruth Groth, Jackie was arrested on charges of harassment and tampering with a motor vehicle arising from the November 21, 1998, incident with Mr. Umbach. Jackie was found not guilty of these charges after a bench trial on February 9, 1999. Although Mr. Umbach is not a City or County employee and is not a defendant in this action, and the November 21, 1998, incident and December 7, 1998, arrest did not involve any of the City Defendants, Jackie contends that the December 7, 1998, arrest is part of the conspiracy engaged in by the City and County Defendants.

### B. Procedural Background

On April 25, 2000, plaintiffs Jacqueline and Larry Busch filed their Complaint And Jury Demand in this action. Count I of the Complaint, against all of the defendants, alleges that the defendants' conduct, described as "including but not limited to assault, battery, false arrest and imprisonment, and invasion of [Jackie's] privacy," "deprived Plaintiff Jacqueline Busch of the rights secured to her by the Constitution of the United States, including but not

limited to, her Fourth Amendment right to be free from unlawful search and seizure, her right to due process of law, which includes the right to be free from unjustified and excessive force, her Constitutional right to privacy guaranteed by the penumbra of the rights pursuant to the Fourth, Fifth, and Fourteenth Amendments, her First Amendment right to free speech, and her right to procedural due process guaranteed by the Fourteenth Amendment." Complaint, ¶ 63. This Count of the Complaint seeks declaratory relief, compensatory and punitive damages, attorney's fees, and such other relief as the court deems appropriate. The remainder of the Busches' Complaint asserts pendent state-law claims, most of which parallel the alleged constitutional violations. Thus, Count II alleges a common-law claim or claims of assault and battery against defendants Houghtaling and Groth. Count III alleges false arrest and imprisonment against unspecified "Defendants." Complaint at ¶ 75. Count IV alleges malicious prosecution and abuse of process—a state-law claim for which no "constitutional" counterpart is asserted—again against unspecified "Defendants," alleging that they "used the legal process of arrest and prosecution to retaliate and harass Plaintiff Jacqueline Busch, and not for their intended uses." *Id.* at ¶ 80. Count V alleges a common-law conspiracy claim, apparently against all defendants, on the basis that "having committed the wrongs set forth above, [they] entered into an agreement with each other to commit those wrongs against Plaintiff Jacqueline Busch." Complaint at ¶ 86. Finally, Count VI alleges a loss of consortium claim by Larry Busch.

The County Defendants answered the Busches' Complaint on May 11, 2000, and the City Defendants answered the Complaint on June 19, 2000. More than a year later, on August 1, 2001, the City Defendants filed the motion for summary judgment presently before the court. The

Busches resisted the City Defendant's motion for summary judgment on August 27, 2001, and the City Defendants filed a reply in further support of their motion for summary judgment on September 14, 2001. The court heard oral arguments on the City Defendants' motion on October 12, 2001. At the oral arguments, plaintiffs Jacqueline and Larry Busch were represented by Jay Denne of Munger, Reinschmidt & Denne in Sioux City, Iowa. The City Defendants were represented by Michael J. Frey of Hellige, Lundberg, Meis, Erickson & Frey in Sioux City, Iowa. The County Defendants and their counsel were excused from the oral arguments.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston*, 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R.CIV.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach*, 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at

587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

In this ruling, as in the oral arguments, the court will consider in turn the City Defendants' grounds for summary judgment as to each of the counts in the Busches' Complaint. The court therefore begins its analysis with the Busches' federal constitutional claims pursuant to 42 U.S.C. § 1983.

### B. Claims Pursuant To § 1983

In their Complaint, the Busches specifically identified the following as constitutional claims pursuant to 42 U.S.C. § 1983: "assault, battery, false arrest and imprisonment, and invasion of [Jackie's] privacy." Complaint, ¶ 63. However, the Complaint also alleges that the violation of Jackie's constitutional rights was "including but not limited to" these claims. *Id.* Indeed, other kinds of constitutional claims are suggested by the recitation in this count of the Complaint of the constitutional rights allegedly violated, including "free[dom] from unlawful search and seizure," "due process of law, which includes the right to be free from unjustified and excessive force," "free speech," and "procedural due process." *Id.* The parties apparently now agree that Jackie's constitutional claims consist of the following: (1) a due process claim arising from termination of her position on the Library Board; (2) assault and battery claims, allegedly of constitutional magnitude, against Officer Houghtaling and Ruth Groth, the City Clerk; (3) a false arrest and imprisonment claim; (4) an invasion of privacy claim; and (5) a claim of retaliation for the exercise of free speech rights. The court will-consider these claims *seriatim.*

#### 1. Due process violation

In their initial brief in support of their motion for summary judgment, the City Defendants contended that they are entitled to summary judgment on Jackie Busch's claim that her dismissal from the Library Board violated her due process rights, because Jackie had no property interest in an unpaid, at-will position on the Library Board. In her resistance to the City Defendants' motion for summary judgment, Jackie contended that her due process claim was premised on violation of her liberty interest as the result of dismissal in a manner that would impugn her reputation. The City Defendants challenged that contention in their reply.

However, at the oral arguments on the City Defendants' motion for summary judgment, Jackie's counsel conceded that Jackie probably could not demonstrate that any liberty interest had been impinged upon by her dismissal from the Library Board and did not contest the court's announcement from the bench that this claim would be dismissed. Therefore, the City Defendants are entitled to summary judgment on Jackie Busch's due process claim arising from her dismissal from the Library Board. Because there does not appear to be any factual basis for asserting such a claim against the County Defendants, and Jackie did not contend that there was, the claim will be dismissed in its entirety.

#### 2. Assault and battery

In contrast to the due process claim, the parties continue to contest the viability of Jackie's claim that she suffered an assault and battery of constitutional proportions on one or more occasions. As pleaded, the parallel common-law claim refers specifically to an "assault and battery on April 26, 1998," allegedly committed by Officer Houghtaling, and an "assault and battery on May 26, 1998," allegedly committed by Ruth Groth. *See* Complaint at ¶ 67. It appears from the parties' arguments that the same incidents underlie the "constitutional" assault and battery claim. Thus,

this "constitutional" claim also does not appear to be directed at the County Defendants or any of the City Defendants other than Officer Houghtaling and Ruth Groth, and Jackie Busch has not argued otherwise.

### a. Arguments of the parties

In support of their contention that summary judgment in their favor should be granted on this "constitutional" claim, the City Defendants argue that not every alleged assault and battery by persons purportedly acting under color of state law rises to the level of a constitutional violation; rather, the City Defendants contend, to reach constitutional proportions, an alleged verbal or physical assault or battery must be literally shocking to the conscience of the court, citing *Doe v. Gooden*, 214 F.3d 952 (8th Cir.2000), and *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir.1997). The City Defendants argue that, even assuming Jackie's allegations are true, neither Officer Houghtaling's profanity and shoving nor Ruth Groth's shutting of a door that struck Jackie Busch qualifies as an injury rising to a constitutional level.

Jackie, however, argues that the *Gooden* decision does not define, clarify, or actually apply the "shock the conscience" standard, because the principal issue in that case was whether the defendants had knowledge of a pattern of unconstitutional acts in order to support a finding of liability under § 1983. Here, she argues that the City Defendants have failed to meet their burden of showing that there is no genuine issue of material fact that they are entitled to judgment as a matter of law, because, she contends, the City Defendants have failed to establish that Officer Houghtaling's "extreme" use of profanity towards Jackie and his "assaulting" Jackie and Ruth Groth's slamming the door on Jackie were not violations of her liberty interest in freedom from bodily injury.

In reply, the City Defendants contend that, where the circumstances did not involve the defendants arresting the plaintiff, the constitutional standard for an "assault" claim is the substantive due process "shock the conscience" standard. They reiterate that the circumstances here are not sufficiently egregious or outrageous to meet this standard.

At oral arguments, the City Defendants also asserted that whether or not the conduct shocked the conscience must be considered in light of the fact that what is alleged is confrontations between adults that degenerated into shoving and slamming a door, not allegations that a state actor abused school children, as in *Gooden*. At oral arguments, Jackie Busch argued that this was not just a "small claims matter," because it should be viewed in the context of a pattern of harassment by city officials in a small town of an unpopular woman with some mental problems.

The court finds, first, that the City Defendants have sufficiently "inform[ed] the district court of the basis for [their] motion and identif[ied] those portions of the record which show lack of a genuine issue," see *Hartnagel*, 953 F.2d at 395, by accepting Jackie Busch's allegations of "assault and battery" as true, then arguing that the allegations nevertheless do not meet the applicable constitutional standard. Thus, the burden is on Jackie Busch to designate "specific facts showing that there is a genuine issue for trial," in light of the applicable legal standard. FED.R.CIV.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

### b. Applicable standard

■ In *Doe v. Gooden*, 214 F.3d 952 (8th Cir.2000), the Eighth Circuit Court of Appeals articulated the applicable standard, noting first that "[v]erbal abuse is normally not a constitutional violation." *Gooden*, 214 F.3d at 955 (citing *Martin v.*

*Sargent,* 780 F.2d 1334, 1339 (8th Cir. 1985)); *accord King v. Olmsted County,* 117 F.3d 1065, 1067 (8th Cir.1997) (" 'Generally, mere verbal threats made by a state actor do not constitute a § 1983 claim.' *Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir.1992)."). The court in *Gooden* continued,

> Physical abuse, on the other hand, may rise to the level of a constitutional violation. *See Webb v. McCullough,* 828 F.2d 1151, 1158–59 (6th Cir.1987) (citing *Hall v. Tawney,* 621 F.2d 607 (4th Cir.1980)). In making that determination, the court considers whether the abuse is "literally shocking to the conscience." *Id.* at 1159.

*Gooden,* 214 F.3d at 955; *see also Rogers v. City of Little Rock, Ark.,* 152 F.3d 790, 796 (8th Cir.1998) (where the allegation involves nonconsensual violation of intimate bodily integrity by a person acting under color of state law, but does not involve the use of excessive force in the course of an arrest, the right to bodily integrity is protected by substantive due process, measured by the "shock the conscience" test); *Haberthur v. City of Raymore, Mo.,* 119 F.3d 720, 724 (8th Cir.1997) ("A substantive due process right to bodily integrity can be violated without proof of an arrest, apprehension, or 'special relationship.' "). However, the Busches are correct that the court in *Gooden* did not then apply this standard, because the court assumed that the alleged physical abuse committed by an employee of the school district shocked the conscience of the court, so that the matter at issue was whether there had been a showing that school district officials "had notice of a pattern of unconstitutional acts in order to support a finding of liability under § 1983." *Id.* at 955–56. That is not the circumstance here, where satisfaction of the "shock the conscience" standard is instead squarely at issue, so the court must look elsewhere for further clarification of the "shock the conscience" standard.

■ Such clarification can be found in other decisions of the Eighth Circuit Court of Appeals. For example, in *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790 (8th Cir.1998), the Eighth Circuit Court of Appeals not only reiterated the continued viability of the "shock the conscience" test, *see Rogers,* 152 F.3d at 796, but applied it to a claim by a woman that she had been raped by a police officer after he followed her home from a traffic stop and mentally coerced her into non-consensual sex:

> The recent decision of the Supreme Court in *County of Sacramento v. Lewis,* 523 U.S. 833, 842–46, 846–50, 118 S.Ct. 1708, 1715–16, 1717–18, 140 L.Ed.2d 1043 (1998), demonstrates ... that the "shocks the conscience" test continues to have validity. In *Lewis,* parents sued to recover for deprivation of their son's substantive due process right to life after he was killed as a result of a police chase. The Court said the claim should be analyzed under the due process clause rather than the fourth amendment. *Id.* at 842–46, 118 S.Ct. at 1715–16. *It explained that the core of the substantive due process concept is "protection against arbitrary action" and against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." Id. at 844–46, 118 S.Ct. at 1716. In a lengthy discussion of the fifty year history of the shocks the conscience test and the policy behind it, the Court explained why this is the appropriate test to apply to substantive due process claims and how the test serves to distinguish abusive executive acts amounting to constitutional violations from breaches of common law duties covered by tort law. Id. at 846–50, 118 S.Ct. at 1717–18. Conduct that is "intended to injure in some way unjustifiable by any government interest" is*

*likely to be conscience shocking. Id. at 848–50, 118 S.Ct. at 1718.*

*The threshold question in a due process challenge to abusive conduct by a state actor is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, at 846–48 n. 8, 118 S.Ct. at 1717 n. 8. The evidence in this case supports the district court's conclusion that Rogers suffered a violation of her right to intimate bodily integrity that was conscience shocking.* This case involves an egregious, nonconsensual entry into the body which was an exercise of power without any legitimate governmental objective. It therefore violated Rogers' substantive due process right. *Morgan's rape was an intentional act that produced constitutional injury and that was an "arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." Lewis,* at 844–46, 118 S.Ct. at 1716 (quoting *Hurtado v. California,* 110 U.S. 516, 527, 4 S.Ct. 111, 28 L.Ed. 232 (1884)). *The rape falls at the extreme end of the scale of egregious conduct by a state actor and was "unjustifiable by any government interest." Lewis,* at 848–50, 118 S.Ct. at 1718. The district court did not err in analyzing the case under the due process clause or in its conclusion that the violation of Rogers' due process rights was shocking to the conscience.

*Rogers,* 152 F.3d at 796–97 (emphasis added). Thus, *Rogers* makes clear that whether assaultive conduct "shocks the conscience" to a degree sufficient to be cognizable as a constitutional claim depends upon *both* the nature of the injury or intrusion *and* the degree to which the intrusion is "unjustifiable by any government interest." *Rogers,* 152 F.3d at 796–97. Obviously, the rape at issue in *Rogers* was at the extreme end of egregiousness

as to either of these considerations. *Id.; see also Haberthur,* 119 F.3d at 724 (addressing the injury prong, holding that the plaintiff sufficiently alleged a constitutional injury where the defendant, in police uniform at the time, fondled her while making suggestive remarks such that his conduct was intrusive, demeaning, and violative of the plaintiff's personal integrity).

On the other hand, in *Wise v. Pea Ridge Sch. Dist.,* 855 F.2d 560 (8th Cir.1988), the court explained that "[m]inor discomfort and hurt feelings do not make a federal case." *Wise,* 855 F.2d at 565. Rather, the court explained, "The conduct must be shocking to the conscience and amount to a severe invasion of the [plaintiff's] personal security and autonomy." *Id.* Moreover, in *Wise,* which involved claims arising from corporal punishment of students by a school coach in a jurisdiction that permitted disciplinary corporal punishment, the Eighth Circuit Court of Appeals held that something more than conduct in excess of a common-law privilege or in violation of state tort or criminal law was required to make out a substantive due process claim. *See id.* Although the court noted that, "[o]rdinarily the question of whether the force used in administering disciplinary corporal punishment is excessive is a question properly resolved by a trier of fact and thus not properly determined on a motion for summary judgment," the court resolved that question as a matter of law "based on [its] review of the affidavits, agency reports, and color photographs of Daniel taken the day the punishment was administered," because the court "believe[d] that no reasonable trier of fact could conclude that the force used in this case was excessive and beyond that which is permissible at common law." *Id.*

■ In *King v. Olmsted County,* 117 F.3d 1065, 1067 (8th Cir.1997), the court clarified the "shock the conscience" stan-

dard in a case involving verbal threats and abuse:

"Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir.1992). "The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *Pittsley v. Warish,* 927 F.2d 3, 7 (1st Cir.1991) (police's threats to children that they would not see their step-father again did not constitute violation of children's right to familial relations) [, *cert. denied,* 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991) ]; *see Emmons v. McLaughlin,* 874 F.2d 351, 353–54 (6th Cir.1989); *Lamar v. Steele,* 698 F.2d 1286, 1286 (5th Cir.1983) (per curiam) [, *cert. denied,* 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983) ]. *We have held that a threat constitutes an actionable constitutional violation only when the threat is so brutal or wantonly cruel as to shock the conscience, see Hopson,* 961 F.2d at 1378–79, *or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers the deprivation of a constitutional right. See Bishop v. Tice,* 622 F.2d 349, 354 (8th Cir.1980).

We conclude that the alleged threats made by Barta and Kindem, although seemingly inappropriate, do not rise to the level of a constitutional violation. Barta and Kindem did not exhibit any conduct suggesting that they intended to take action on the alleged threats. In addition, the Kings, who were represented by counsel, had ample opportunity to challenge the alleged threats; they could have consulted with counsel regarding the possibility that the children would be taken, and they could have informed any of the three judges review-

ing their case of the statements. *Even when viewed in the light most favorable to the Kings, the alleged threats can at worst be characterized as "verbal harassment or idle threats" that are "not sufficient to constitute an invasion of an identified liberty interest." Pittsley,* 927 F.2d at 7.

*King,* 117 F.3d at 1067–68 (emphasis added). Thus, to satisfy the "injury" prong of the "shock the conscience" standard, verbal abuse must be more than "verbal harassment or idle threats," and must instead be "brutal or wantonly cruel" or "exer[t] coercive pressure." *Id.*

### c. Application of the standard

■ For purposes of the City Defendants' motion for summary judgment, the court will accept as true Jackie's allegations of assaults by Officer Houghtaling and Ruth Groth. Thus, in considering whether the assaultive conduct alleged "shocks the conscience," the court must first consider whether there is any genuine issue of material fact as to whether either Houghtaling's or Groth's assaultive conduct was somehow "justifiable by any government interest." *See Rogers,* 152 F.3d at 797. The court concludes that no reasonable trier of fact could find that it was. *See Wise,* 855 F.2d at 565 (the court may decide a substantive due process question as a matter of law, even where the issue is ordinarily reserved for the trier of fact, where no reasonable trier of fact could find otherwise). There was no interest of the City of Anthon that justified Officer Houghtaling in using abusive language toward Jackie or shoving her, nor was there any interest of the City of Anthon that justified Ruth Groth in slamming a door on Jackie. Although the City Defendants elsewhere argue that Houghtaling's and Groth's conduct was "reasonable under the circumstances," they do not attempt to argue that their conduct was actually "*jus-*

*tifiable* by any government interest." *See Rogers*, 152 F.3d at 797 (emphasis added). "Conduct that is 'intended to injure in some way unjustifiable by any government interest' is likely to be conscience shocking." *Id.* (quoting *Lewis*, 523 U.S. at 849, 118 S.Ct. 1708). However, the lack of justification by any government interest does not end the matter here, because the court must also consider the second prong of the analysis.

The second prong of the "shock the conscience" inquiry examines the nature of the injury. Thus, whether the violation of the plaintiff's right to bodily integrity is so egregious as to "shock the conscience" focuses on the nature of the intrusion on bodily integrity, looking for "constitutional injury." *See id.; Haberthur*, 119 F.3d at 724; *Wise*, 855 F.2d at 565. Similarly, whether verbal threats constitute actionable constitutional violations depends upon whether they are "brutal or wantonly cruel" or "exer[t] coercive pressure." *King*, 117 F.3d at 1067.

■■■■ As to physical intrusion, in contrast to the rape at issue in *Rogers*, and the sexual fondling at issue in *Haberthur*, Jackie Busch has alleged nothing more than "[m]inor discomfort and hurt feelings," which ordinarily "do not make a federal case." *Wise*, 855 F.2d at 565. There is nothing in either the unjustifiable shove administered by Officer Houghtaling or the door-slamming by Ruth Groth that "amount[ed] to a severe invasion of [Jackie Busch's] personal security and autonomy." *Id.* Indeed, Jackie has pointed to no medical records demonstrating any physical injury of any kind from either incident. *See id.* (finding no sufficient physical injury after considering "affidavits, agency reports, and color photographs"); *see also* Fed.R.Civ.P. 56(e) (the party resisting summary judgment must designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324,

106 S.Ct. 2548. Although Jackie did not direct the court's attention to any such evidence, the court has *sua sponte* perused the portions of her deposition testimony that are presently in the record in this case and finds therein no description of the nature of any physical or emotional injuries, nor any description of medical or psychological treatment required as a result of any such injuries. *See, e.g.*, Deposition of Jacqueline Busch (Excerpts) at 39 (City Defendants' Appendix at 8), 69 (City Defendants' Appendix at 13), 72 (City Defendants' Appendix at 14). Therefore, on the present record, no reasonable trier of fact could find "a severe invasion of the [plaintiff's] personal security and autonomy" in either the incident involving Officer Houghtaling or the incident involving Ruth Groth that is sufficiently egregious to "shock the conscience." *See Wise*, 855 F.2d at 565.

■■■■ Similarly, there is nothing in the record from which a reasonable trier of fact could conclude that Officer Houghtaling's alleged verbal assault, which consisted of Houghtaling telling Jackie to "get the fuck out of here," is "so brutal or wantonly cruel" or so "coercive" as to "shock the conscience." Rather, Officer Houghtaling's use of foul language "can at worst be characterized as 'verbal harassment' . . . that [is] 'not sufficient to constitute an invasion of an identified liberty interest.'" *Id.* at 1068 (quoting *Pittsley*, 927 F.2d at 7). Nor is the combination of foul language and a shove sufficient for any reasonable trier of fact to find a constitutional injury, even if the implicit threat of the statement was proved not to be "idle" by the subsequent shove, because the behavior sought to be coerced—Jackie's immediate departure—did not involve any deprivation of constitutional rights.

Consequently, the City Defendants are entitled to summary judgment on Jackie's

claim of assaults or batteries in violation of her constitutional rights.

### 3. False arrest and imprisonment

#### a. Arguments of the parties

The City Defendants argue, in the first instance, that the Busches' claim of false arrest and imprisonment appears to be directed only at the County Defendants, as none of the City Defendants attempted to arrest or imprison either of the plaintiffs, but Jackie was twice arrested and detained by Woodbury County Sheriff's Deputies. Moreover, the City Defendants argue that this claim must fail, because the arresting officers had probable cause to make the arrests, based on the arrest records submitted in their Appendix.

The Busches' resistance does not clarify against whom this claim is asserted or in what way the City Defendants could be held liable on such claims. Instead, the Busches argue that the arresting officers lacked probable cause to arrest Jackie on either May 26, 1998, or December 7, 1998, and could not reasonably have believed that they had probable cause for either arrest, because there was no reasonably trustworthy information to justify a prudent person in believing that Jackie had committed the charged crimes. More specifically, Jackie contends that there was no probable cause to believe she had stolen $2.20 worth of photocopies, because she returned to the library to pay for the copies, and did indeed give the money to Helen Pulliam, after receiving permission from Pulliam to go home to get the money. She argues that the other charges stemming from the photocopying incident are completely baseless, because no prudent person would believe that knocking over books would constitute a simple assault or interference with official acts. Jackie argues that the arrest on December 7, 1998, was just as baseless, because there was no damage from the minor car collision to support a charge of "tampering" or "harassment." She contends that the false imprisonment claims are viable, because the underlying charges were without probable cause, but on each occasion, she was held for several hours before being allowed to bond out of custody.

#### b. Allegations against City Defendants

The first step in analyzing the motion for summary judgment regarding the Busches' false arrest and imprisonment claim is to determine whether or not the claim is, or can be, asserted against any of the City Defendants. As pleaded, the parallel state-law claim in Count III alleges that unspecified "Defendants" "falsely arrested and imprisoned Plaintiff Jacqueline Busch on or about May 26, 1998 *by falsely reporting that she had stolen the photocopies from the library,* and on/or about December 7, 1998 because of the unwarranted and frivolous harassment and tampering charges." Complaint at ¶ 75 (emphasis added). Thus, at least as to the arrest on May 26, 1998, the Complaint alleges that the claim arises from "false reporting" of a theft of photocopies from the library. As Ms. Pulliam and Ms. Groth were the only City Defendants alleged to be present at the scene on that date, and one or the other of them allegedly called 911 to report the theft to the Woodbury County Sheriff's Office, the court concludes that both the "constitutional" and "state law" false arrest and imprisonment claims asserted on the basis of the May 26, 1998, arrest are asserted against City Defendants Pulliam and Groth, in addition to any of the County Defendants. However, there is no allegation that any City Defendant had any involvement in the arrest and imprisonment on December 7, 1998. Thus, the court cannot conclude that any false arrest and imprisonment claim, either "constitutional"

or purely "state law," can be asserted against the City Defendants on the basis of the arrest on that date.

### c. Applicable standards

■ The parties refer the court to *Kurtz v. City of Shrewsbury*, 245 F.3d 753 (8th Cir.2001), as stating the "probable cause" standard for a false arrest and imprisonment claim. That decision discusses such a claim, first, under Missouri state law, *see Kurtz*, 245 F.3d at 757, then as a "constitutional" claim pursuant to 42 U.S.C. § 1983. *See id.* at 758. Although both discussions apply a "probable cause" standard, only the latter is pertinent here. That portion of the *Kurtz* decision is as follows:

[A] false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest. *See Anderson v. Franklin County*, 192 F.3d 1125, 1131 (8th Cir.1999) (false arrest claim under § 1983 does not lie where officer had probable cause to make arrest). Since the record adequately supports the conclusion that the police officers had probable cause to arrest Kurtz for tampering [with a motor vehicle], plaintiffs' allegations of false arrest fail to establish a civil rights violation. *See* Mo.Rev.Stat. § 569.080 (person commits the crime of tampering when he or she wrongfully operates an automobile without the consent of the owner). It is undisputed that Kurtz lacked the owner's consent. Thus, the police officers had sufficient probable cause to arrest Kurtz, and plaintiffs have no claim for false arrest under § 1983.

*Kurtz*, 245 F.3d at 758. Thus, the *Kurtz* decision plainly requires that, when a "constitutional" false arrest claim is asserted against an arresting officer, the key question is whether there was "probable cause" for the arrest of the plaintiff, which is measured by examining the law that the plaintiff purportedly violated. Moreover,

the "probable cause" requirement in *Kurtz* is what gives constitutional proportions to what otherwise might be only a state-law tort, for it is the presence or absence of "probable cause" that determines whether the plaintiff's *constitutional* rights have been violated. *See, e.g., Quezada v. County of Bernalillo*, 944 F.2d 710, 714 (10th Cir.1991) (the fact that a police officer may have committed a tort is not enough for liability under § 1983; rather, the question is whether the tortious conduct violated any of the plaintiff's constitutional rights).

However, in this case, the Busches' Complaint alleges that the basis for liability of City Defendants Pulliam and Groth for false arrest and imprisonment is that they *falsely reported* that Jackie had stolen photocopies from the library. Complaint at ¶ 75. Neither Pulliam nor Groth is a law enforcement officer, but neither was simply a "private citizen" reporting a crime. Instead, both Pulliam and Groth are alleged to be state actors purportedly acting in their official capacities when reporting Jackie's alleged crime of stealing photocopies from the city library. *Kurtz* does not settle, or even address, the question of whether a person—even a state actor acting in his or her official capacity—who *reports* an alleged crime, leading to the arrest of the plaintiff, can be held liable for false arrest under § 1983, *even assuming that the arrest was without probable cause.*

Under the law of some states, a false arrest claim will not lie against a person who only reports a suspected crime, if the person in no other way instigates the arrest. *See, e.g., King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir.1997) (under New York law, "if a defendant erroneously reports a suspected crime, but in no other way instigates the arrest, he is not liable for false imprisonment"); *Lewis v. Continental Airlines, Inc.*, 80 F.Supp.2d

686, 702 (S.D.Tex.1999) ("[W]hile the evidence does not indicate that Tisdel called the police for the purpose of reporting a crime, if she did, she was merely exercising a 'citizen's privilege to report an alleged crime and identify the supposed offender,' which is inadequate to support a claim of false imprisonment in Texas.") (citation omitted). Iowa appears to be such a jurisdiction.

In *Dixon v. Hy–Vee, Inc.*, 2001 WL 912738 (Iowa Ct.App. Aug.15, 2001), the Iowa Court of Appeals considered a "false imprisonment" claim against a grocery store chain. The claim was based on a store manager's report to the police of the license plate of a car in which certain persons fled after being stopped by the manager for suspected shoplifting and after one of them punched the manager in the face before making good their escape. *Dixon*, 2001 WL 912738 at *1. A car with matching license plates was subsequently stopped by police and the store manager was brought to the scene where he identified one of the males in the car as the shoplifter and one of the females as having been involved in the incident. *Id.* However, the male identified was later acquitted of charges arising from the incident and, in a subsequent civil suit, alleged that the manager's negligent identification had led to his false arrest and imprisonment. *Id.* The appellate court affirmed the trial court's directed verdict for the grocery store chain. *Id.*

 The court in *Dixon* first explained that "false arrest" is one way of committing the tort of "false imprisonment," so that they are not distinguishable or distinct causes of action, but only a single charge of false imprisonment. *Id.* at *2 (citing cases). The court then turned to the question of the liability of a person for "false imprisonment" for *reporting* a crime, as follows:

Under the Restatement:

(1) An actor is subject to liability to another for false imprisonment if

(a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and

(b) his act directly or indirectly results in such a confinement of the other, and

(c) the other is conscious of the confinement or is harmed by it.

*Restatement (Second) of Torts* § 35 (1965); *Nelson [v. Winnebago Indus., Inc.]*, 619 N.W.2d [385,] 388 [ (Iowa 2000) ]. "Accordingly, a private citizen at whose request, direction, or command a police officer makes an arrest without a warrant is liable if the arrest turns out to be unlawful." 32 *Am.Jur.2d* False Imprisonment § 40 (1995). "One who instigates or participates in the unlawful confinement of another is subject to liability to the other for false imprisonment." *Restatement (Second) of Torts* § 45A (1965); see also 32 *Am.Jur.2d* False Imprisonment § 40 (1995) ("Before a person may be found liable for causing false imprisonment through false arrest, that person must have personally and actively participated therein directly or by indirect procurement.")

It is clear from the record that Hy–Vee did not directly detain or confine Dixon in any way. It was the police, and the police alone, who directly detained, arrested and imprisoned Dixon. Therefore, the question is whether the trial court was correct in determining that Dixon did not present substantial evidence that Hy–Vee instigated, requested, or directed Dixon's arrest or detention by the police.

Instigation consists of words or acts which direct, request, invite or encourage the false imprisonment itself. In the case of an arrest, it is the equivalent, in words or conduct, of

"Officer, arrest that man!" It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them.

*Restatement (Second) of Torts* § 45A cmt. c (1965). "There is no liability for merely giving information to legal authorities, who are left entirely free to use their own judgment, or for identifying the plaintiff as the person wanted." W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 11 at 52 (5th Ed.1984). *See also Lewis v. Farmer Jack Division, Inc.,* 415 Mich. 212, 327 N.W.2d 893, 894 (1982) (holding supermarket was not liable for false arrest of plaintiff despite store employee's misidentification of plaintiff as robber and subsequent dismissal of robbery charge against plaintiff—arrest was not a "false arrest" because probable cause to arrest existed); *Smits v. Wal–Mart Stores, Inc.,* 525 N.W.2d 554, 558 (Minn.Ct.App. 1994) ("A party is not liable for false imprisonment for conveying information about suspected criminal activity unless that party directly persuades or commands the police to detain the suspect."); *Dangberg v. Sears, Roebuck and Co.,* 198 Neb. 234, 252 N.W.2d 168, 171 (1977) (stating that one who merely tells an officer what he knows of a supposed offense or gives information to an officer tending to show that a crime has been committed, without requesting an arrest, is not liable for false arrest and imprisonment); *Wishnatsky v. Bergquist,* 550 N.W.2d 394, 399 (N.D. 1996) (holding there is no liability where a private citizen merely summons the police for assistance and does not specifically request the person be arrested or supply false information, or merely provides information to police and leaves the decision of whether to arrest to the officer's judgment and discretion) [, *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996) ]; Landis, *Annotation, False Imprisonment: Liability of Private Citizen, Calling on Police for Assistance after Disturbance or Trespass, for False Arrest by Officer,* 98 A.L.R.3d 542 §§ 2 and 4, 1980 WL 130926 (1980) (citing cases where federal and state courts have held private citizen is not liable for false arrest or false imprisonment when he or she did not specifically request the officer arrest the alleged offender or supply false information to the police). Supplying false information means supplying information the supplier knows is false, and does not mean the mere good faith supplying of mistaken information. *See Powers v. Carvalho,* 117 R.I. 519, 368 A.2d 1242, 1248 (1977) and cases cited therein. Dixon did not argue in resisting directed verdict and does not argue on appeal that Hy–Vee supplied information to the police that it knew to be false, and there is no substantial evidence it did so.

As stated above, the trial court found, as a matter of law, that Hy–Vee could not be held liable for false arrest or false imprisonment under the facts of this case. The court determined there was no proof Hy–Vee detained or restrained Dixon in any way and there was no evidence that Hy–Vee demanded or requested Dixon's detention or arrest. We agree with the conclusions of the trial court.

*Dixon,* 2001 WL 912738 at \*2–\*3. Thus, for a false arrest and imprisonment claim to lie against a person who reported a crime, Iowa law requires not only that the arrest be shown to be "unlawful," but that the person who reported the crime "instigated" the arrest, not simply reported it. The comparable "constitutional" claim, the

court concludes, requires proof that the arrest was without probable cause, which is the constitutional violation, *see Kurtz,* 245 F.3d at 758, and that the person reporting the purported crime actually "instigated" the arrest, as the factual basis for the reporting person's liability. *Cf. Dixon,* 2001 WL 912738 at *2–*3.

### d. Application of the standards

While the City Defendants apparently concede that one or the other of the City Defendants present, either Ruth Groth or Helen Pulliam, called 911, the parties have not put at issue, at this point in the proceedings, whether or not either Groth or Pulliam did anything more than " 'giv[e] information to legal authorities,' " or " 'identif[y] the plaintiff as the person wanted,' " or simply left the Woodbury County Sheriff's Deputies who responded to the 911 call " 'entirely free to use their own judgment' " in making the arrest. *Dixon,* 2001 WL 912738 at *3 (quoting W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 11 at 52 (5th Ed.1984)). Thus, while it is an essential issue for determination of the ultimate liability of either Groth or Pulliam for false arrest for "reporting" Jackie Busch's purported criminal activity, the issue of whether or not these defendants "instigated" the false arrest is not now before the court.

█ Instead, the City Defendants' motion for summary judgment on this claim is premised on the constitutional injury part of the claim, the "no probable cause" requirement, which the court concludes is applicable to the party reporting the plaintiff's purported criminal activity, just as it is applicable to the parties who actually effect the arrest. *See Kurtz,* 245 F.3d at 758 (a "constitutional" false arrest claim depends upon whether or not the arresting officers had probable cause for the arrest). As to this ground for summary judgment, it is not clear which City Defendant made

the 911 call, nor is it clear whether the City Defendant who made the 911 call reported only a "theft" of the photocopies, or also reported an alleged assault and alleged interference with official acts, what information either Groth or Pulliam may have given Woodbury County Sheriff's Deputies in the initial call or at the scene, or what the Sheriff's Deputies may have observed themselves at the scene before making the arrest. The court finds that the "arrest reports" upon which the City Defendants rely to establish that the Sheriff's Deputies had probable cause to arrest Jackie on May 26, 2001, fall very short of establishing that proposition as a matter of law. Although the arrest reports state identifying information about Jackie, indicate that she was "depressed" at the time of her booking, and also identify the charges and arresting officers, they include no explanation whatsoever of the circumstances in which Jackie was arrested or the officers' reasons for arresting her. *See* City Defendants' Appendix at 31–34. On the other hand, Jackie's own deposition testimony about the events on May 26, 2001, leaves questions for a trier of fact to resolve concerning the circumstances in which she was arrested, because, for example, she acknowledges that she at first refused to pay for the photocopies and left the library without doing so, although she also asserts that she had Helen Pulliam's permission to go get some money so that she could pay for the copies upon her return.

Thus, there are genuine issues of material fact as to whether or not the arresting officers had probable cause to arrest Jackie on the charges identified in the arrest report from May 26, 2001. The City Defendants' motion for summary judgment on this claim will consequently be denied.

### 4. Invasion of privacy

In Count I of their Complaint, the Busches expressly identify an invasion of

privacy claim as one of their "constitutional" claims pursuant to 42 U.S.C. § 1983, but they do not identify the defendant or defendants against whom such a claim is asserted. In their motion for summary judgment, the City Defendants contend that the Busches have not alleged any evidence that any of the City Defendants violated Jackie Busch's privacy rights and that they are therefore entitled to summary judgment on this part of the Busches' § 1983 claim. In their resistance to the City Defendants' motion for summary judgment, the Busches "concede that the evidence in this case shows that the invasion of privacy claim would be solely against the Woodbury County Sheriff's Department, specifically, Defendant Deputy Sheriff Doug Boetger." Plaintiffs' Resistance Brief at 13. Therefore, the court concludes that the City Defendants are entitled to summary judgment on this portion of the Busches' § 1983 claim.

### 5. Retaliation for exercise of free speech rights

#### a. Arguments of the parties

The final § 1983 claim at issue is the Busches' claim identified in Count I of their Complaint as a violation of Jackie's "First Amendment right to free speech." Complaint, ¶ 63. In the first instance, the City Defendants took this claim to be a claim that Jackie was terminated from her position on the Library Board in retaliation for complaining to Mayor Roark about the behavior of Officer Houghtaling. The City Defendants therefore contended that Mayor Roark did not make the decision to terminate Jackie from the Library Board; rather, they contend that it is undisputed that the request for Jackie's removal came from the other members of the Library Board. The City Defendants also contended that, assuming Jackie complained to Mayor Roark about Officer Houghtaling's conduct, she did not voice concerns about a matter of "public concern," but only about a confrontation between a public employee and a public appointee about a matter that was devoid of any political, social, or other concern to the community at large. Finally, the City Defendants contended that, even if Jackie complained to Mayor Roark about Officer Houghtaling's behavior, and the complaint was about a matter of public concern, there is no causal connection between the exercise of purported free speech rights and her dismissal from the Library Board, because she was dismissed at the request of the other Library Board members in circumstances that show that the dismissal was not influenced or motivated by her complaint to Mayor Roark about Officer Houghtaling.

In their resistance to the City Defendants' motion for summary judgment, however, the Busches contend that the City Defendants misinterpreted this claim. They contend that the allegation is not that Mayor Roark dismissed Jackie from the Library Board in retaliation for her exercise of free speech rights, but that Mayor Roark made a complaint to the Woodbury County Sheriff's Office that Jackie was "harassing" him in retaliation for her exercise of free speech rights. The Busches therefore contend that the City Defendants have failed to meet their burden to establish that they are entitled to judgment as a matter of law on this portion of the Busches' § 1983 claim, which the Busches apparently concede is directed only at Mayor Roark.

In reply, the City Defendants contend that the Busches' characterization of their claim in their resistance is contrary to, or at least a withdrawal of, parts of the allegations found in their Complaint. They contend that paragraphs 27 and 28 of the Busches' Complaint allege that after Jackie complained to Mayor Roark about Officer Houghtaling's conduct, she was

terminated from the Library Board in retaliation for exercising her first amendment rights, a claim the City Defendants now contend is waived. The City Defendants add an assertion that any free speech claim was waived by Jackie's voluntary resignation from the Library Board on May 5, 1998, after she obtained the advice of counsel.

At oral arguments, the City Defendants also contended that there was nothing in the record showing that Mayor Roark ever made a harassment complaint to the Woodbury County Sheriff's Office. The Busches responded that Jackie's deposition testimony is that, when she asked why a Sheriff's Deputy had come to her house to question her on or about May 5, 1998, the Deputy told her it was concerning a harassment complaint by the Mayor.

### b. Nature of the claim

The court finds that the factual allegations in the Complaint that are pertinent to the Busches' free speech claim are the following:

27. On or about April 30, 1998, Plaintiffs went to see the Mayor of the City of Anthon, Iowa, Defendant Richard Roark, regarding Defendant Houghtaling's violent behavior. Defendant Roark advised Plaintiff Jacqueline Busch that she was being terminated from the library board.

28. Said termination of Plaintiff Jacqueline Busch from the library board violated Plaintiff's right to procedural due process and was in retaliation for her exercise of her First Amendment right to free speech.

29. On or about May 5, 1998, Defendant Roark called the Woodbury County Sheriff and accused Plaintiff Jacqueline Busch of harassment. This was in retaliation for Busch's free speech right to complain to city officials about Houghtaling's behavior.

Complaint at ¶¶ 27–29. Thus, the Complaint expressly alleged that both Jackie's termination from the Library Board and the purported report of harassment by Mayor Roark were in retaliation for the exercise of her free speech right to complain about Officer Houghtaling's behavior. However, just as plainly, the Busches have now abandoned the free speech claim premised on retaliation in the form of dismissal from the Library Board and rely entirely on retaliation in the form of the purported report of harassment by Mayor Roark. *See* Plaintiff's Resistance Brief at 14. Therefore, only this alleged retaliation is now properly at issue in this case.

### c. Applicable standards

 As the Eighth Circuit Court of Appeals recently explained, "In order to establish the elements of a [free speech] retaliation claim under 42 U.S.C. § 1983, [Jackie] must show that she was engaged in constitutionally protected activity, that [Mayor Roark's] adverse action caused her to suffer an injury which would 'chill a person of ordinary firmness from continuing ... in that activity,' and that the adverse action was motivated in part by [her] exercise of her constitutional rights." *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir.2001) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998)). Thus, "[t]o survive a motion for summary judgment, [Jackie] must come forward with factual support that [Mayor Roark] acted in retaliation because of the exercise of [Jackie's] protected First Amendment rights." *Bechtel v. City of Belton*, 250 F.3d 1157, 1161 (8th Cir.2001). For speech to fall under the protection of the First Amendment, it must "touc[h] on a matter of public concern." *Hall v. Missouri Highway & Transp. Comm'n*, 235 F.3d 1065, 1067 (8th Cir.2000).

### d. Application of the standards

■ As to the retaliation claim still before the court, the City Defendants argue, first, that there is no evidence that Mayor Roark ever made a "harassment" complaint against Jackie to the Woodbury County Sheriff's Office, so that there is simply no factual support for Jackie's contention that Mayor Roark ever acted in retaliation for Jackie's exercise of free speech rights, *see Bechtel*, 250 F.3d at 1161, assuming that her complaints about Officer Houghtaling were protected speech. *See Hall*, 235 F.3d at 1067. In her resistance brief, Jackie cited only paragraph 29 of her Complaint in support of her contention "that the complaints [about Officer Houghtaling] led to Mayor Roark's notification of the Woodbury Count Sheriff's Department that Plaintiff Jackie was harassing the mayor." *See* Plaintiff's Resistance Brief at 14. At oral arguments, when counsel for the City Defendants asserted that there was no evidence that the Mayor had ever called the Woodbury County Sheriff's Office to complain that Jackie was harassing him, plaintiffs' counsel responded that, in her deposition, Jackie said that was what she was told when she asked the Sheriff's Deputy why he had come to her house on or about May 5, 1998. Plaintiffs' counsel contended that this statement of the reason for the "investigation" is an admission of a party opponent. However, plaintiffs' counsel did not cite or submit the pertinent portions of Jackie's deposition, either then or subsequently, and the court's review of the excerpts of Jackie's deposition in the City Defendants' Appendix does not reveal any such testimony.

■ Thus, the City Defendants have met their "initial responsibility of informing the district court of the basis for [their] motion" with regard to the free speech claim by "identifying those portions of the record which show lack of a genuine is-

sue," which, in this case, consist of the absence of any supporting evidence for the allegedly retaliatory act. *Hartnagel*, 953 F.2d at 395. However, the Busches have not met their burden in response to the motion for summary judgment on this part of their § 1983 claim, because they have failed to designate "specific facts showing that there is a genuine issue for trial" by pointing to "depositions, answers to interrogatories, and admissions on file" that would demonstrate that Mayor Roark ever made a "harassment" complaint against Jackie to the Woodbury County Sheriff's Office. FED.R.CIV.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Plainly, reference to allegations in a Complaint does not satisfy the non-moving party's burden under Rule 56(e) to designate evidence generating a genuine issue of material fact, or summary judgment could never be granted. Although, in reviewing the record, the court must view all the *facts* in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the *facts, see Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same), if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re TMJ Implants Prod. Liab. Litig.*, 113 F.3d at 1492. Because the Busches have made no showing on the essential element of retaliatory action, in support of their free speech retaliation claim, the City Defendants are entitled to judgment as a matter of law on this claim. *Id.* Furthermore, because the Busches have not alleged that any of the County Defendants retaliated against Jackie for exercising her free speech rights, and have instead relied exclusively on allegedly retaliatory conduct by Mayor Roark, the

"free speech" portion of the Busches' § 1983 will be dismissed in its entirety.

### 6. Qualified immunity

As their final ground for summary judgment on the Busches' § 1983 claims, the City Defendants contend that they are entitled to qualified immunity. Because the only § 1983 claim on which the City Defendants are not already entitled to summary judgment is the Busches' claim of false arrest and imprisonment, the court need only consider qualified immunity in reference to that claim. Moreover, the only City Defendants against whom that claim can be brought are Helen Pulliam and Ruth Groth. Therefore, the court need only consider the qualified immunity of those two defendants as to the false arrest claim.

### a. Arguments of the parties

The City Defendants make no argument that Helen Pulliam is entitled to qualified immunity. As to Ruth Groth, the City Defendants' qualified immunity argument pertaining to the false arrest and imprisonment claim is as follows: "According to Jackie Busch, Ruth Groth may have called 911 and demanded she pay for her photocopies during this May 26, 1998 altercation at the library.... Under these circumstances, Ms. Groth's actions did not violate any constitutional right of Jackie Busch and were objectively reasonable." City Defendants' Brief at 10–11. Although the Busches resisted summary judgment on the basis of qualified immunity, the entirety of their response to the City Defendants' argument that Ruth Groth is entitled to qualified immunity concerns the now-defunct "constitutional" assault and battery claim, not the false arrest and imprisonment claim. *See* Plaintiffs' Resistance Brief at 20.

### b. Applicable standards

"Qualified immunity shields governmental officials from personal liability if their actions, even if unlawful, were 'nevertheless objectively reasonable in light of the clearly established law at the time of the events in question.'" *Turpin v. County of Rock*, 262 F.3d 779, 783 (8th Cir.2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Thus, "[q]ualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeffer*, 262 F.3d 847, 849 (8th Cir.2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir.2001) (also quoting *Harlow*). "In other words, officials are protected by qualified immunity so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Wilson*, 260 F.3d at 951 (quoting *Anderson*, 483 U.S. at 638, 107 S.Ct. 3034).

"In determining if [defendants] are entitled to qualified immunity [courts] must ask whether [the plaintiffs] stat[e] a violation of a constitutional right, and whether that right was clearly established at the time, such that a reasonable officer would have known that his conduct violated the law." *Wilson*, 260 F.3d at 951 (citing *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir.2001)); *see also Turpin*, 262 F.3d at 783 ("The inquiry in determining whether the officers are entitled to qualified immunity focuses on whether the [plaintiffs] have asserted a violation of a clearly-established constitutional right and, if so, whether there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action

· indeed violated that right."); *Hunter v. Namanny*, 219 F.3d 825, 829 (8th Cir. 2000) (describing the test as a "three-part inquiry" under which the court asks "(1) whether [the plaintiff] has asserted a violation of a constitutional or statutory right; (2) if so, whether that right was clearly established at the time of the violation; and (3) whether, viewing the facts in the light most favorable to [the plaintiff], there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right"). Thus, even if the plaintiffs have alleged violation of a clearly-established constitutional right, a defendant is entitled to summary judgment on the basis of the qualified immunity defense if that defendant establishes that there is no genuine issue of material fact that a reasonable official would *not* have known that the defendant's conduct violated that clearly-established right. *See, e.g., Hunter*, 219 F.3d at 831 ("Because it is clearly established that the Fourth Amendment requires a warrant application to contain a truthful factual showing of probable cause, we next consider the objective reasonableness of [the officer's] actions, i.e., whether there are genuine issues of material fact as to whether a reasonable official would have known that [the officer's] actions violated that requirement," and "given the genuine factual disputes that remain, a jury must decide whether [the officer's] actions were objectively reasonable.").

### c. Application of the standards

■ The plaintiffs have failed to satisfy their burden to designate "specific facts showing that there is a genuine issue for trial" on Ruth Groth's qualified immunity to their "constitutional" false arrest claim, because they have not pointed to "depositions, answers to interrogatories, and admissions on file" responsive to the question of the reasonableness of Ruth Groth's conduct with regard to the false

arrest claim. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Instead, the entirety of their argument concerning Ruth Groth's qualified immunity is addressed to her conduct giving rise to the "constitutional" assault and battery claim, which the court has already found will not withstand a motion for summary judgment. Nevertheless, the City Defendants are not entitled to summary judgment on Ruth Groth's qualified immunity defense to the false arrest claim.

■ This is so, because the City Defendants have not met their "initial responsibility of informing the district court of the basis for [their] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Under governing law, one element of the Busches' false arrest claim is proof that the arrest was without probable cause. *Kurtz*, 245 F.3d at 758. However, the court finds that the critical issue for determining whether or not Ruth Groth (or for that matter, Helen Pulliam) reasonably should have known that there was *not* probable cause to arrest Jackie Busch is when, precisely, the defendant reported Jackie's purported crime. *See supra* Section II.B.3.b (concluding that the common-law and "constitutional" false arrest claims could be premised on false reporting of a crime). For example, if Jackie did indeed have Pulliam's permission to leave the library to get money to pay for the copies, and the defendant reporting the "theft" of the photocopies knew that, there might not have been probable cause to report a "theft." On the other hand, if the report was made on the basis of Jackie's refusal to pay for the copies and her son's departure with the copies, even if Jackie subsequently obtained permission to leave the library to

get money to pay for the copies, there might have been probable cause to report a "theft." Also, as to the "instigation" element of a false arrest claim premised on false reporting of a crime, the City Defendants have not pointed to any evidence establishing as a matter of law that Groth (or Pulliam) did no more than report the crime, leaving to the discretion and judgment of the Woodbury County Sheriff's Deputies who responded to the report the determination of whether or not Jackie should be arrested. Moreover, the City Defendants have not pointed to any evidence establishing as a matter of law which of the City Defendants, Groth or Pulliam, actually called 911. Thus, "given the genuine factual disputes that remain, a jury must decide whether [Groth's or Pulliam's] actions [in reporting the alleged theft] were objectively reasonable." *Hunter*, 219 F.3d at 831.

Therefore, the City Defendants are not entitled to summary judgment on the Busches' false arrest claim on the basis of qualified immunity.

### C. Common-law Claims

In addition to their "constitutional" claims pursuant to 42 U.S.C. § 1983 in Count I of their Complaint, the Busches assert several common-law claims: assault and battery against defendants Houghtaling and Groth in Count II; false arrest and imprisonment against unspecified "Defendants" in Count III; malicious prosecution and abuse of process, again against unspecified "Defendants," in Count IV; "conspiracy" in Count V; and loss of consortium in Count VI. The City Defendants' primary contention regarding these common-law claims is that the court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 if the court grants summary judgment on all of the "constitutional" claims. However, the court could not decline to exercise supplemental jurisdiction over common-law

claims in this case, even if it had granted the City Defendants' motion for summary judgment in its entirety. This is so, because "constitutional" claims upon which federal jurisdiction is also premised have been asserted against the County Defendants, and those defendants have not moved for summary judgment. The court declines to consider *sua sponte* whether non-moving defendants are also entitled to summary judgment on any claims upon which federal jurisdiction could be based.

Nevertheless, the court concludes that some consideration must be given to at least some of the common-law claims. First, as the parties appear to recognize, the entry of summary judgment on the Busches' "constitutional" claim of assault and battery in no way reflects on the merits of the parallel common-law claims of assault and battery, because the insufficiency of the "constitutional" claim was in the lack of evidence of an assault or battery *rising to constitutional proportions;* the parties did not put at issue whether or not the evidence demonstrated that no common-law assault had occurred. Second, the same genuine issues of material fact that preclude summary judgment on the "constitutional" false arrest claim also preclude summary judgment on the parallel common-law claim, because Iowa law also premises a false arrest claim on an "unlawful" arrest, for example, an arrest without probable cause, *see, e.g., Dixon*, 2001 WL 912738 at *2, and the defendants did not put at issue the basis for liability of any defendant for reporting a crime on the ground that that defendant had not, as a matter of law, "instigated" the unlawful arrest. *See id.* at *2–*3. Third, although the City Defendants are correct that *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir.2001), holds that an "allegation of malicious prosecution cannot sustain a civil rights claim under

§ 1983," the plaintiffs point out, and the court finds, that the plaintiffs have only asserted their malicious prosecution claim as a common-law claim. Fourth, the parties have not put at issue the loss of consortium claim of Larry Busch on the City Defendants' motion for summary judgment.

The parties' contentions concerning the "conspiracy" claim require further consideration. In seeking summary judgment on this claim, the City Defendants first contended that the Busches must provide facts suggesting a mutual understanding between defendants to commit *unconstitutional* acts, and that the Busches have done nothing that establishes such a link in this case, citing *Kurtz*, 245 F.3d at 758. The Busches, however, responded that, based on their other arguments, they have pointed to sufficient facts to support a conspiracy claim under Iowa law, citing *Basic Chemicals, Inc. v. Benson*, 251 N.W.2d 220, 232–33 (Iowa 1977). In reply, the City Defendants argue that the Busches' conspiracy claim fails, even to the extent that it is premised on Iowa law rather than federal law, first, because the Busches have not cited any specific evidence that supports a conspiracy, and second, because the plaintiffs have not identified or provided evidence of any acts causing injury, where a common-law civil conspiracy claim under Iowa law requires an act causing injury undertaken in furtherance of the conspiracy.

■■■ This court recently summarized Iowa law regarding civil conspiracies as follows:

A recognized aspect of Iowa law is the legal theory of civil liability for conspiracy to commit a wrongful act. *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 232–33 (Iowa 1977); *Cora v. Strock*, 441 N.W.2d 392, 394 (Iowa Ct.App.1989). However, the Iowa Supreme Court has repeatedly "recognized that '[c]ivil con-

spiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy which give rise to the action.'" *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 302 (Iowa 1994) (quoting *Basic Chems., Inc.*, 251 N.W.2d at 233, and *Lindaman v. Bode*, 478 N.W.2d 312, 317 (Iowa Ct.App.1991)). The Iowa Supreme Court explained the nature of civil conspiracy in *Basic Chemicals* as follows:

A conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful. It may be proven by substantial evidence.

*Basic Chems., Inc.*, 251 N.W.2d at 232; *accord Cora*, 441 N.W.2d at 394 (quoting *Basic Chemicals*). To put it another way, civil conspiracy requires "mutual mental action coupled with an intent to commit the act which results in injury." *Basic Chems., Inc.*, 251 N.W.2d at 233. Thus, "[t]he principal element of conspiracy is an agreement or understanding between two or more persons to effect a wrong against or injury upon another." *Id.; accord Locksley v. Anesthesiologists of Cedar Rapids, P.C.*, 333 N.W.2d 451, 456 (Iowa 1983).

*Wright v. Brooke Group, Ltd.*, 114 F.Supp.2d 797, 836 (N.D.Iowa 2000).

Although the City Defendants originally addressed the Busches' conspiracy claim as a claim of a conspiracy to violate constitutional rights pursuant 42 U.S.C. § 1983, their contention that there was no evidence of mutual understanding between defendants to commit unconstitutional acts also put at issue an essential element of a civil conspiracy under Iowa law: " 'an agreement or understanding between two or more persons to effect a wrong against or injury upon another.' " *Id.* (quoting

*Basic Chems., Inc.,* 251 N.W.2d at 233). The Busches' response to the City Defendants' motion for summary judgment on this claim likewise addresses the same issue of an unlawful agreement, albeit under Iowa law, because the Busches assert that, based on their other arguments, they have pointed to sufficient facts to support a conspiracy theory. Similarly, the City Defendants' reply to the Busches' contention that they have sufficient evidence to support a conspiracy claim under Iowa law reiterates the City Defendants' contention that there is no such evidence of an agreement to injure Jackie Busch. Thus, the court may properly consider summary judgment on the civil conspiracy claim under Iowa law.

 The court agrees with the City Defendants that the Busches have not designated "specific facts showing that there is a genuine issue for trial," on the basis of record evidence, on whether or not there was an agreement or understanding between or among any of the defendants to effect a wrong against or injury upon either of the Busches. FED.R.CIV.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The record evidence is certainly sufficient to generate inferences that Jackie Busch had generated hostility from a number of quarters, including the Library Board, city government, and a private citizen, Lincoln Umbach, and that, on two occasions—one of which did not involve any City Defendants in any way—Jackie Busch was arrested by Woodbury County Sheriff's Deputies. This series of events, standing alone, does not give rise to a reasonable inference that any injuries were tied together by an agreement to effect wrongs or injuries against Jackie Busch, and the Busches have pointed to no evidence connecting the dots in even the most tenuous fashion. Certainly, no reasonable trier of fact could conclude that there is the necessary "substantial evidence" of an agreement among the defendants to injure Jack-

ie Busch. *See Wright,* 114 F.Supp.2d at 836 (under Iowa law, " '[a] conspiracy . . . may be proven by substantial evidence' ") (quoting *Basic Chems., Inc.,* 251 N.W.2d at 232). Therefore, the City Defendants are entitled to summary judgment on the Busches' common-law civil conspiracy claim.

### III. CONCLUSION

The City Defendants' motion for summary judgment must be, and hereby is, **granted in part and denied in part.** Specifically,

1. As to the City Defendants' motion for summary judgment on the Busches' claims pursuant to 42 U.S.C. § 1983 in Count I:

a. The City Defendants are entitled to summary judgment on the Busches' claim of a due process violation arising from Jackie Busch's termination from her position on the Library Board; because the claim is not asserted against any County Defendants, the claim is dismissed in its entirety;

b. The City Defendants are entitled to summary judgment on the Busches' "constitutional" claims of assault and battery against Officer Houghtaling and Ruth Groth; because the claim is not asserted against any County Defendants, the claim is dismissed in its entirety;

c. The City Defendants are entitled to summary judgment on the Busches' invasion of privacy claim, because that claim is not now asserted against any of the City Defendants; and

d. The City Defendants are entitled to summary judgment on the Busches' claim of retaliation for the exercise of free speech rights; because the claim is not asserted against any County Defendants, the claim is dismissed in its entirety; but

e. The City Defendants are *not* entitled to summary judgment on the Busches' "constitutional" claim of false arrest and imprisonment against defendants Pulliam and Groth.

2. The City Defendants are *not* entitled to summary judgment on the Busches' common-law assault and battery claims against defendants Houghtaling and Groth in Count II.

3. City Defendants Groth and Pulliam are *not* entitled to summary judgment on the Busches' common-law claim of false arrest and imprisonment in Count III.

4. The City Defendants are *not* entitled to summary judgment on the Busches' common-law claim of malicious prosecution and abuse of process in Count IV, which was not challenged in these proceedings.

5. The City Defendants are entitled to summary judgment on the Busches' common-law civil conspiracy claim in Count V. Because this claim also involves allegations against the County Defendants, but those defendants have not moved for summary judgment, this claim is only dismissed at this time as to the City Defendants.[2]

**IT IS SO ORDERED.**

---

**2.** The loss of consortium claim in Count VI was not put at issue by the City Defendants' motion for summary judgment.