**Edward CORA, Plaintiff–Appellee,**

v.

**Stanley STROCK and Helen Strock, Defendants–Appellants.**

No. 87–1815.

Court of Appeals of Iowa.

March 16, 1989.

Patrick W. Brick, Douglas F. Staskal of Brick, Seckington, Bowers, Swartz & Gentry, P.C., Des Moines, for defendants-appellants.

Walter T. Hart, Marcus Abels of Dreher, Wilson, Simpson, Jensen, Sellers, Adams & Kaiser, P.C., Des Moines, for plaintiff-appellee.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

This is an appeal by the defendants, Stanley and Helen Strock, from a joint and several judgment rendered against them in favor of the plaintiff, Edward Cora, following a trial to the court. The judgment entered was in the amount of $31,521.88 compensatory damages, with interest from the date of the filing of the petition, and $31,521.88 punitive damages, with interest from the date of the judgment.

The plaintiff was awarded judgment on the theory of conversion in a dispute with the defendants over a $25,000 certificate of deposit. The only question on appeal is whether the judgment is supported by substantial evidence. Since we give an affirmative answer, we affirm the judgment.

This action was tried at law to the court. The court's findings of fact thus have the force of a jury verdict, and we view the evidence in its light most favorable to those findings. If the findings are supported by substantial evidence, we are bound by them. In this respect, the findings are broadly and liberally interpreted and, in case of ambiguity, are construed to uphold rather than defeat the judgment. Iowa R.App.P. 14(f)(1); *Murray v. Conrad*, 346 N.W.2d 814, 817 (Iowa 1984). We will evaluate the trial court's findings with these principles in mind.

Edward Cora is a Polish national who resides in Krakow, Poland. He came to this country on a temporary visa in November of 1981. His temporary visa was later extended by presidential proclamation because of the political unrest in Poland.

Edward Cora found employment at Iowa Packing Company in Des Moines in December of 1981. While in the course of his employment, he received severe injuries which required hospitalization.

The defendants learned of the plaintiff's circumstances through publicity from the local media and also by personal contacts. They visited the plaintiff in the hospital.

While hospitalized, the plaintiff underwent multiple surgeries. When it came time for his release, he was informed by the attending physician that he could not return to his living quarters and that it would be best if he entered a nursing home. In addition to his medical problems, the plaintiff was unable to communicate with others because of his inability to speak English.

The Strocks were aware of Mr. Cora's problem and offered to take him to their home. He agreed and while there he paid them as much as $80 per week for his room, board, and care.

The plaintiff was unaware of his rights under the workers' compensation act. The Strocks encouraged him to file a claim. He did so through an attorney recommended by a friend of the Strocks. Mr. Cora eventually received an award under the act and after reduction for attorney fees, it totalled $52,974.25. From this amount, he gave the Strocks some $3,500 in cash. $3,000 of this amount was given at the suggestion of Mr. Strock, who represented to Mr. Cora that this was the amount Mr. Cora's lawyer told them they were entitled to from the worker's compensation proceeds. Mr. Cora's lawyer denied ever telling Strock this.

Immediately prior to Mr. Cora's return to Poland in December of 1983, he, accompanied by defendant Stanley Strock, deposited the $52,974.25 in his bank account. He then drew out all of his cash, closed his account, and, at the suggestion of Mr. Strock who was acting as his interpreter, purchased a two-and-one-half-year certificate of deposit (maturity date of June 12, 1986) in the principal amount of $25,000. He named himself, his daughter in Poland, and Mr. Strock as joint signators on the certificate. The certificate of deposit was left with the Strocks for safekeeping.

Mr. Cora returned to Poland. The Strocks corresponded with him until August of 1984. He heard nothing further from them. He tried to call, but the Strocks changed their phone number and by then had an unlisted number. In September of 1984, while yet in Poland, he learned that his certificate of deposit had been cashed. He then started the paper work to enable him to return to this country. He continued his effort, without success, to contact the Strocks. Finally, in December of 1985, he returned to this country.

He had telegrammed the Strocks to meet him at the airport. They did not do so. He took a cab to their residence. They were unfriendly and told him he was not welcome. When he asked for his certificate of deposit, Mr. Strock told him there was no money, that when he stopped writing he should have known that he had already taken the money. The Strocks threatened to call the police if he did not leave. Mrs. Strock denied that he ever left any money with them. Mr. Cora left their home. He went back several days later, but was again ordered off the premises.

In July of 1984, defendant Stanley Strock had cashed the certificate of deposit. When he surrendered the certificate, the bank gave him the proceeds in cash. A penalty for early withdrawal was assessed. At trial time, the $25,000 had been spent except for an amount less than $100.

Both Helen and Stanley Strock spent the money. The trial court found that Helen "actively participated in receiving, holding, spending and refusing to return plaintiff's funds to him on demand." In concluding that Helen Strock was jointly and severally liable, the court found that she actively aided and abetted in perpetuating the wrongful conversion of the funds through her joint control over the same. The court, in reaching this result, also found "the utter lack of credibility in the defendants' testimony."

The trial court found that Mr. Strock was included as an authorized signatory on the certificate of deposit as an accommodation to the plaintiff, and joint ownership was never intended. As the trial court found, "It was simply intended to facilitate a good transfer of funds to plaintiff's daughter, as circumstances might later dictate, or to transfer the funds to plaintiff in Poland if that was subsequently found to be necessary."

Substantial evidence in this case supports that finding along with the finding that the defendants wrongfully converted the plaintiff's certificate of deposit. Conversion is defined as the act of wrongful control or dominion over chattels in derogation of another's possessory right thereto. *Welke v. City of Davenport*, 309 N.W. 2d 450, 451 (Iowa 1981).

The main thrust of the defendants' appeal appears to center around whether Helen Strock is jointly and severally liable. A recognized aspect of Iowa law is the legal theory of civil liability for conspiracy to commit a wrongful act. *Basic Chemicals, Inc. v. Benson*, 251 N.W.2d 220, 232–33 (Iowa 1977). As the court in *Basic Chemicals* stated:

A conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful. It may be proven by substantial evidence, . . . . Civil conspiracy is not itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy which give rise to the action.

*Id.* at 232. In addition, persons "aiding and abetting" in a conversion are jointly and severally liable for resulting damages.

See 18 Am.Jur.2d *Conversion* § 70 at 192. We find substantial evidence in the record to support a finding that the cashing of the certificate of deposit and the spending of the money was performed pursuant to a conspiracy between Stanley and Helen Strock.

There is additionally substantial evidence in the record to support a finding that a "confidential relationship" existed between the plaintiff and the defendants. *Luse v. Grenko*, 251 Iowa 211, 217, 100 N.W.2d 170, 172 (Iowa 1959). It is clear from the record that the plaintiff spoke very little or no English; that he was physically disabled and convalescing while residing with the defendants; and that he relied on the defendants for transportation and to act as interpreters in conducting his affairs. The court, in *Luse*, stated:

> The question of confidential relationship assumes such importance here because actions of this kind in which such relationship exists are governed by a different rule than applies where it is not shown. Ordinarily one who attacks a transfer of money or property because of fraud or undue influences must show existence thereof by clear, satisfactory, and convincing proof. However, where it clearly appears the transferee was the dominant person in a confidential relationship with the transferor, a presumption arises that the transfer was obtained by fraud or undue influence which the transferee must rebut by clear, satisfactory, convincing evidence.

*Id.* at 214, 100 N.W.2d at 172.

The only mention of punitive damages in defendants' brief is a statement that "Exemplary damages may be awarded for conversion if it is characterized by malice or willful disregard of plaintiff's rights. *Sandhorst v. Mauk's Transfer, Inc.*, 252 N.W. 2d 393 (Iowa 1977)" and "... there is insufficient evidence to support the court's award of punitive damages." We agree with defendants' recitation as to the law, but disagree that there is insufficient evidence to support the trial court's award. When we review the record, we find substantial evidence to support the trial court's award for punitive damages.

We affirm the trial court.

AFFIRMED.