John Franklin WILLIAMS, Peter Martin Williams, and James Oliver Williams, Plaintiffs,

v.

SECURITY NATIONAL BANK OF SIOUX CITY, IOWA, Defendant–Counterclaimant,

v.

John Franklin Williams, Peter Martin Williams, and James Oliver Williams, Counter–Defendants.

No. C 03–4034–MWB.

United States District Court, N.D. Iowa, Western Division.

Nov. 6, 2003.

Dana A Dwiggins, Lionel, Sawyer & Collins, Las Vegas, NV, Jay Elliott Denne, Stanley E Munger, Munger, Reinschmidt & Denne, Sioux City, IA, Mark A Solomon, Lionel, Sawyer & Collins, Las Vegas, NV, for Plaintiff.

Glianny Fagundo-Toro, Michael P Bruyere, Lord, Bissell & Brook, Atlanta, GA,

Maurice B Nieland, Rawlings Neiland Probasco Killinger Ellwanger Jacobs, et al, Sioux City, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING MOTION TO DISMISS COUNTERCLAIMS

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I.   *INTRODUCTION* .................................................960
   A.   *Factual Background* .........................................960
   B.   *Procedural Background* .....................................963

II.  *LEGAL ANALYSIS* ............................................965
   A.   *Standards For A Motion To Dismiss* .........................965
   B.   *Nature Of The Claims And Counterclaims* ...................967
   C.   *Breach Of Contract* ........................................968
      1.   *Arguments of the parties* ...............................968
      2.   *Pleading of the claim* .................................969
   D.   *Fraud* .....................................................971
      1.   *Arguments of the parties* ...............................971
      2.   *Pleading of the claim* .................................971
   E.   *Conspiracy* ................................................972

III. *CONCLUSION* ...............................................973

Are the defendant's counterclaims for breach of contract, fraud, and conspiracy viable, or are they contradicted by the very documents upon which they are premised? That is the question in this litigation involving remainder beneficiaries' claims that the trustee of a trust mismanaged the assets of the trust. The trustee contends, and has premised its counterclaims on the contention, that the remainder beneficiaries specifically authorized and directed the trustee to take the actions regarding holding certain closely-held family corporation investments and not otherwise diversifying the assets of the trust about which the remainder beneficiaries now complain. The remainder beneficiaries, however, contend that the trustee's counterclaims fail to state claims upon which relief can be granted, because the documents submitted by the trustee in support of the counterclaims show that the remainder beneficiaries never gave the alleged authorizations or directions.

## I.   INTRODUCTION

### A.   Factual Background

On a motion to dismiss, the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In this case, where the motion to dismiss attacks counterclaims, the facts that must be taken as true are, therefore, the facts alleged in the Answer and Counterclaims. Thus, the following factual background is drawn primarily from defendant Security National Bank's Answer and Counterclaims, supplemented where necessary, for appropriate context, by factual allegations from the plaintiffs' Complaint, and exhibits attached to either the Answer and Counterclaims or the Complaint.[1] However, the court will not

---

1. On a motion to dismiss, the court may consider certain matters outside of the pleadings without converting the motion into a motion for summary judgment, for example, where "the plaintiffs' claims are based solely on the interpretation of the documents [submitted] and the parties do not dispute the actual contents of the documents." *Jenisio v. Ozark Airlines, Inc., Retirement Plan,* 187 F.3d 970, 972 n. 3 (8th Cir.1999) (citing *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir.1997)).

recount here all of the parties' factual allegations, but only sufficient of them to put in context the present motion to dismiss counterclaims.

On August 16, 1982, Dorothy Pritchard Williams established a trust, later amended on February 29, 1984, which the court, like the parties, will describe as the DPW Trust. At times pertinent to this litigation, Security National Bank (SNB) was a co-trustee of the DPW Trust. Upon Dorothy Williams's death in 1984, Charles Williams became the life income beneficiary of the trust. Plaintiffs John, Peter, and James Williams are the remainder beneficiaries of the DPW Trust. Therefore, the plaintiffs will be described collectively as the Remainder Beneficiaries.

The parties agree that part of the investment portfolio of the DPW Trust consisted of stock in closely-held Pritchard family corporations, identified as Pritchard Investment Corporation (PICO), Pritchard Associates, and Roanoke Realty Company.[2] In 1989, SNB took note of the fact that these assets were closely held and that stock in them was not widely traded or easily marketable. *See* Answer and Counterclaims, Exhibit A. Consequently, a trust officer of SNB sent a letter dated August 3, 1989, to co-trustee John Pritch-

ard asking him to sign a copy of the letter to indicate "if [he] want[ed] to continue to hold the above listed assets in the [DPW Trust]." *See id.*[3] John Pritchard signed a copy of the letter on August 14, 1989, indicating his desire that the DPW Trust continue to hold the assets in the closely-held family corporations. Also on August 14, 1989, John Pritchard wrote the SNB trust officer a letter indicating, in pertinent part, that "[o]ur families *do* wish to retain the 'closely-held family investments' such as Pritchard Associates, Pritchard Investment Company, and the old Roanoke Realty Corporation...." Answer and Counterclaims, Exhibit B (emphasis in the original). That letter also acknowledged that SNB would "exclude the value of these particular assets from the trust when calculating the basis for [SNB's] management fee." *Id.*

Shortly thereafter, the SNB trust officer sent a letter, dated September 15, 1989, to remainder beneficiaries James Oliver Williams and John Franklin Williams, the body of which stated the following:

> We would like to follow up on a proposal initiated sometime ago by Chuck Williams, and recently approved by John Pritchard. Our period reviews of the investments in this account have always

2. This last company apparently has had a variety of names. *See* Answer and Counterclaims, Exhibit B. However, the court will not attempt to trace those name changes here.

3. The body of the August 3, 1989, letter to John Pritchard stated the following:

> One of the policies of the Trust Department provides that the investments in trust accounts should usually be diversified in companies whose stock is widely traded, and thus easily marketable. Upon reviewing the Dorothy Pritchard Williams Trust, account # 1–02758–00, I noticed that the following assets are now being held:
> 885 shares—Pritchard Investment Company common stock

> 18.314% Interest Pritchard Associates—Pizza Hut Properties
> 18.314% Roanoke Partnership
> These assets are obviously closely held and the stock is not widely traded or easily marketable.
> Please sign and return the enclosed copy of this letter if you want to continue to hold the above listed assets in the above account. If you do not want to retain the assets in this account, please contact me at your earliest convenience to discuss the sale of the assets and the reinvestment of the proceeds.
> Thank you for your cooperation. If you have any further questions, please feel free to contact me.
> Answer and Counterclaims, Exhibit A.

had a problem with the closely-held family investments—Pritchard Investment Company, Pritchard Associates, and Plaza West Associates. We would like to propose that all of the beneficiaries of this account join Chuck Williams and John Pritchard in directing us to hold these assets. In return, we would exempt the market values of those assets from calculation of our principal fee.

Let me explain what this step would mean. As Co–Trustee with John Pritchard, Security National Bank currently shares investment responsibility for Pritchard Investment Company, Pritchard Associates, and Plaza West Associates. Part of that responsibility is to monitor those investments in a timely way and in terms of their investment quality. That is very difficult for us to do at this time, because they are closely-held family interests and information is not readily available on them. We understand that the decision to hold these assets is based largely on family considerations and is not purely an investment decision, so we would suggest that the family join together in directing us to hold them and relieve us of our responsibility for monitoring those investments. If you would like to join in the direction to hold these assets, and to relieve the Security National Bank of any responsibility for them, please countersign the enclosed copy of this letter and return it to me in the envelope provided. If you have any questions about this move, please feel free to give me a call at (712) 277–6727. Exempting these assets from

fee considerations would mean a savings of approximately $1,500 a year in principal fees.

Answer and Counterclaims, Exhibits C & D. James Oliver Williams and John Franklin Williams signed and returned copies of this letter. *Id.* Peter Martin Williams signed and returned a copy of a similar letter dated December 19, 1989. *See* Answer and Counterclaims, Exhibit E.[4]

The "General Allegations" upon which SNB's counterclaims are based are the following:

### 5.

On or before August 14, 1989, Counterclaim Defendants informed John Pritchard, Co–Trustee of the DPW Trust, that they wanted SNB to maintain the investments in closely-held family corporations, rather than diversify the DPW Trust's investment portfolio by purchasing stock of widely-traded, easily marketable companies. *See* August 3, 1989 and August 14, 1989 letters exchanged between SNB and John Pritchard attached hereto as Exhibits A and B.

### 6.

On or about September 15, 1989, Counterclaim Defendants James Oliver Williams and John Franklin Williams individually entered into a contract with SNB wherein they directed SNB not to diversify the DPW Trust investment portfolio and [to] keep the investments in closely-held family corporations. As

---

**4.** The only difference between the September 15, 1989, letters signed by James Oliver Williams and John Franklin Williams and the December 19, 1989, letter signed by Peter Martin Williams was that the letter signed by Peter Martin Williams included the following paragraph as the first paragraph of the letter:

In checking our records, we find that we do not yet have your agreement to a proposal

dating back to September of this year. I apologize if we have misplaced the letter that you returned to us, and am sending you the same information for your consideration and prompt return. Our letter of September 15, 1989, went like this:

Answer and Counterclaims, Exhibit E.

consideration for the contract, SNB agreed to exempt the market values of those assets from calculation of SNB's principal fee. *See* contracts attached hereto as Exhibits C and D.

### 7.

On January 18, 1990, Counterclaim Defendant Peter Martin Williams entered into a contract with SNB wherein he directed SNB not to diversify the DPW Trust investment portfolio and [to] keep the investments in closely-held family corporations. As consideration for the contract, SNB agreed to exempt the market values of those assets from calculation of SNB's principal fee. *See* contract attached hereto as Exhibit E.

### 8.

After receiving the executed contracts, SNB justifiably relied on the statements contained therein and in the contracts' validity by maintaining certain investments in closely-held family corporations and not further diversifying the DPW Trust's investment portfolio.

Answer and Counterclaims, ¶¶ 5–9.

When Charles Williams died on May 7, 2002, John, Peter, and James Williams allege that they became entitled to distribution of the remainder of the Trust. This lawsuit involves claims by these Remainder Beneficiaries against SNB for its purported mismanagement of the DPW Trust over the last two decades.

### B. Procedural Background

The Remainder Beneficiaries of the DPW Trust, plaintiffs John Franklin Williams, Peter Martin Williams, and James Oliver Williams, filed their Complaint against defendant Security National Bank on May 1, 2003 (docket no. 1). Although the Complaint originally named Security National Corporation as a defendant, Security National Corporation has since been dismissed from this action.

The Complaint asserts various claims premised on alleged mismanagement of the DPW Trust by SNB.

For present purposes, however, only some of the allegations of Count III, a claim for breach of fiduciary duty, are pertinent. Those allegations are the following:

51. SNB had a fiduciary duty to review the trust property and make and implement decisions concerning the retention and disposition of assets, which included diversifying the investments of the Trust.

52. SNB acted in bad faith or in disregard of the purposes of the Trust and/or the interests of the beneficiaries by maintaining a trust portfolio that improperly benefited the income beneficiary to the detriment of the remainder beneficiaries by investing the majority of the trust's asset[s] in fixed income assets and otherwise failing to diversity [sic] the Trust assets as set forth in Mr. Dreschler's letter, Exhibit D. *See* Iowa Code Sections 633.4201(1) and 633.4201(2).

53. As a result of SNB's breaches of fiduciary duties, or more specifically, its failure to diversify the Trust's assets, the Trust's principal actually diminished over a sixteen (16) year period.

Complaint, Count III, ¶¶ 51–53.

On July 7, 2003, SNB filed its Answer and Counterclaims (docket no. 16). As to the Remainder Beneficiaries' breach-of-fiduciary-duty claim, SNB denied any allegations of duties inconsistent with duties imposed by the Iowa Trust Code and otherwise denied the breach-of-fiduciary-duty claim. *See* Answer and Counterclaims, ¶¶ 51–53. In support of its counterclaims, SNB alleges generally that, because of the filing of the Remainder Beneficiaries' Complaint, which SNB characterizes as "seek[ing] damages for claims based on

SNB's alleged failure to diversify DPW Trust's investment portfolio," "SNB has incurred and will continue to incur significant damages associated with the defense of this lawsuit." *Id.* at ¶¶ 9–10. SNB, therefore, asserts counterclaims of breach of contract, fraud, and conspiracy.

SNB's Counterclaim I alleges breach of contract, as follows:

12.

Counterclaim Defendants entered into the contracts with SNB authorizing and directing SNB not to diversify the DPW Trust's investment portfolio and [to] keep the investments in closely-held family corporations.

13.

SNB performed all conditions, covenants, and promises on its part required to be performed in accordance with the terms and conditions of the contract.

14.

Counterclaim Defendants breached the contracts by acting in contravention of the terms of the contracts when they filed a lawsuit premised on the actions or inactions SNB took or failed to take pursuant to its contractual duties.

15.

As a result of Counterclaim Defendants' breach of contract, SNB has been damaged in that it has been forced to incur and continues to incur significant cost, expense, and other damages in defending this lawsuit.

Answer and Counterclaims, Counterclaim I.

SNB's Counterclaim II alleges fraud, as follows:

17.

Counterclaim Defendants intentionally and fraudulently induced SNB to enter into the contracts, to not further diversi-

fy the DPW Trust's investment portfolio, and to keep the investments in the closely-held family corporations by making fraudulent representations via Co–Trustee John Pritchard, and by executing the contracts.

18.

At the time the false statements were made, Counterclaim Defendants knew that the statements made to Co–Trustee John Pritchard, and those contained in the contracts, were false as they now allege that all along they wanted and expected SNB to further diversify the DPW Trust's investment portfolio.

19.

At the time they purported to enter into the contracts with SNB, Counterclaim Defendants intended to deceive and induce SNB to enter into the contracts and act in reliance of [sic] the false statements contained in the communications with the Co–Trustee John Pritchard, and in the contracts.

20.

SNB actually and justifiably relied on the false representations made by the Counterclaim Defendants.

21.

Due to SNB's justifiable reliance on the materially false representations made by Counterclaim Defendants, SNB entered into the contracts and did not further diversify the assets in the DPW Trust's portfolio.

22.

But for Counterclaim Defendants' fraudulent and intentionally false and misleading misrepresentations, SNB would not have not [sic] entered into the contracts, would have further diversified

the DPW Trust's investment portfolio, and would not have incurred the damages associated with the existence or defense of this lawsuit.

23.

Counterclaim Defendants are liable to SNB for all damages associated with the fraud Counterclaim Defendants perpetrated.

Answer and Counterclaims, Counterclaim II.

Finally, SNB alleges conspiracy, as follows:

25.

The facts stated here show that each individual Counterclaim Defendant either directly conspired with the other Counterclaim Defendants to fraudulently mis-state Counterclaim Defendants' true wishes and intentions with respect to the DPW Trust's investment portfolio, or knew and acquiesced in, or actively participated in, the other Counterclaim Defendants' perpetration of a fraud on SNB by intentionally failing to disclose material facts and making materially false representations regarding the Counterclaim Defendants' true intentions with respect to the DPW Trust's investment portfolio.

Answer and Counterclaims, Counterclaim III.

On July 28, 2003, the Remainder Beneficiaries filed the Motion To Dismiss Counterclaims Asserted By Security National Bank (docket no. 20), which is presently before the court. In that motion, the Remainder Beneficiaries assert that SNB's counterclaims fail to state claims upon which relief can be granted. SNB resisted the motion on August 14, 2003 (docket no. 24), and the Remainder Beneficiaries filed a reply on September 16, 2003 (docket no. 35). Neither side requested oral arguments on the motion, which the court, therefore, considers fully submitted on the written submissions.[5]

## II. LEGAL ANALYSIS

### A. Standards For A Motion To Dismiss

The issue on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his, her, or its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party, here SNB, are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir.1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir.1999) ("We take the well-pleaded allegations in the complaint as

**5.** Plaintiffs John Franklin Williams, Peter Martin Williams, and James Oliver Williams are represented by Stanley E. Munger and Jay E. Denne of Munger, Reinschmidt & Denne, L.L.P., in Sioux City, Iowa, and by Mark A. Solomon and Dana A. Dwiggins of Lionel, Sawyer & Collins in Las Vegas, Nevada. Defendant Security National Bank is represented by Maurice B. Nieland of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser in Sioux City, Iowa, and by Michael P. Buyere and Glianny Fagundo–Toro of Lord, Bissell & Brooke, L.L.P., in Atlanta, Georgia.

true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen,* 168 F.3d 1109, 1113 (8th Cir.1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines,* 167 F.3d 439, 441 (8th Cir.1999) (same); *Wisdom v. First Midwest Bank,* 167 F.3d 402, 405 (8th Cir.1999) (same); *Duffy v. Landberg,* 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied,* 525 U.S. 821, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998); *Doe v. Norwest Bank Minn., N.A.,* 107 F.3d 1297, 1303–04 (8th Cir.1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.,* 105 F.3d 1195, 1198 (8th Cir.1997) (same); *First Commercial Trust v. Colt's Mfg. Co.,* 77 F.3d 1081, 1083 (8th Cir.1996) (same). On a motion to dismiss pursuant to Rule 12(b)(6), the court ordinarily cannot consider matters outside of the pleadings, unless the court converts the Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56. *SEE* FED. R. CIV. P. 12(b)(6); *see also Buck v. F.D.I.C.,* 75 F.3d 1285, 1288 & n. 3 (8th Cir.1996). However, on a motion to dismiss, the court may consider certain matters outside of the pleadings without converting the motion into a motion for summary judgment, for example, where "the plaintiffs' claims are based solely on the interpretation of the documents [submitted] and the parties do not dispute the actual contents of the documents." *Jenisio v. Ozark Airlines, Inc., Retirement Plan,* 187 F.3d 970, 972 n. 3 (8th Cir.1999) (citing *Silver v. H & R Block, Inc.,* 105 F.3d 394, 397 (8th Cir.1997)).

The court is mindful that in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver,* 105 F.3d at 397 (citing *In re Syntex Corp. Securities Lit.,* 95 F.3d 922, 926 (9th Cir.1996)); *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990) (the court "do[es] not, however, blindly accept the legal conclu-

sions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987), and 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595–97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1103 (6th Cir.1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan,* 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in SNB's Answer and Counterclaims, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver,* 105 F.3d at 397; *Westcott,* 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire,* 112 F.3d 1339, 1347 (8th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *accord Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer,* 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir.1995)); *Gordon,* 168 F.3d at 1113

("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir.1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir.1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). The Rule does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Thus, "[a] motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

The court will apply these standards to each of SNB's counterclaims in turn. However, the court must first consider the Remainder Beneficiaries' general contention that SNB's counterclaims are "based upon the misconception or mischaracterization of the claims asserted against it by [the Remainder Beneficiaries] in their Complaint." Counter–Defendants' Motion To Dismiss Counterclaims Asserted By Security National Bank (docket no. 20), 1.

### B. Nature Of The Claims And Counterclaims

The Remainder Beneficiaries' first ground for dismissal of SNB's counterclaims is that SNB has misconceived and mischaracterized the Remainder Beneficiaries' own claims. Specifically, the Remainder Beneficiaries contend as follows:

The [Remainder Beneficiaries] are not asserting that [SNB] improperly held closely-held family business interests as assets of the [DPW Trust] in violation of their consent for [SNB] to do so. Nor are the [Remainder Beneficiaries] trying to hold [SNB] liable for failing to diversify those specific assets. Rather, the [Remainder Beneficiaries] are asserting that [SNB] failed to diversify the remaining assets (non-closely held family businesses) in light of the fact that the closely-held family business assets were income assets, and failed to properly retain and invest the proceeds from the eventual sale of those closely-held family businesses. Accordingly, [SNB's] falsely premised counterclaims for breach of contract, fraud and conspiracy fail to state a claim and should be dismissed pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Counter–Defendants' Motion To Dismiss Counterclaims Asserted By Security National Bank (docket no. 20), 1–2. SNB, however, contends that this argument that the Remainder Beneficiaries have not breached the contracts, committed fraud, or conspired to commit fraud is an argument that must ultimately be decided by the trier of fact.

The court, however, finds that the scope of the claims and counterclaims *as alleged* does not necessarily match the scope of the claims and counterclaims as now characterized by the parties. First, as to the Remainder Beneficiaries' breach-of-fiduciary-duty claim, the Remainder Beneficiaries have expressly alleged that SNB breached its fiduciary duty "by investing the majority of the trust's asset[s] in fixed income assets and otherwise failing to diversi[f]y the Trust assets." Complaint, Count III, ¶ 52. The Remainder Beneficiaries elsewhere assert that the "fixed income assets" included the interests in the closely-held family corporations. *See, e.g.*, Complaint, Exhibit D (report of Mark Dreschler). Thus, a fair reading of the Re-

mainder Beneficiaries' breach-of-fiduciary-duty claim is that the Remainder Beneficiaries *are* complaining that SNB failed to diversify the assets of the DPW Trust, in part, by holding the assets in the closely-held family corporations as assets of the DPW Trust. Therefore, SNB's counterclaims are not subject to dismissal on the ground that SNB has "misconceived" or "mischaracterized" the Remainder Beneficiaries' own claims.

However, even accepting the Remainder Beneficiaries' present contentions as narrowing the scope of their breach-of-fiduciary-duty claim regarding failure to diversify the assets of the DPW Trust—and, indeed, the court finds that the Remainder Beneficiaries are now estopped to assert a broader scope to their breach-of-fiduciary-duty claim—such narrowing would not necessarily remove all basis for SNB's counterclaims. This is so, because SNB does not merely premise its counterclaims on the contention that the Remainder Beneficiaries entered into "contracts" to allow SNB to hold the assets of the closely-held family corporations as assets of the DPW Trust. Rather, SNB's counterclaims are premised on SNB's contention that the "contracts" "authoriz[ed] and direct[ed] SNB *not to diversify the DPW Trust's investment portfolio and* [to] keep the investments in closely-held family corporations," Answer and Counterclaims, Counterclaim I, ¶ 12 (emphasis added); that the Remainder Beneficiaries "intentionally and fraudulently induced SNB to enter into the contracts, *to not further diversify the DPW Trust's investment portfolio, and* to keep the investments in the closely-held family corporations," Answer and Counterclaims, Counterclaim II, ¶ 17 (emphasis added); and that the Remainder Beneficiaries conspired "to fraudulently mis-state Counterclaim Defendants' true wishes and intentions *with respect to the DPW Trust's investment portfolio.*" Answer and Counterclaims, Counterclaim III, ¶ 25 (empha-

sis added). Thus, SNB's counterclaims are premised on an allegation that the Remainder Beneficiaries authorized the lack of diversification about which they now complain, *as well as* upon an allegation that the Remainder Beneficiaries purportedly agreed to let SNB hold the assets of the closely-held family corporations as assets of the DPW Trust. This alternative premise for SNB's counterclaims is not affected by the Remainder Beneficiaries' narrowing of the scope of their own claims.

Therefore, the court turns to consideration of the Remainder Beneficiaries' motion to dismiss each of SNB's counterclaims in turn.

### C. Breach Of Contract

### 1. Arguments of the parties

SNB's breach-of-contract counterclaim alleges that the Remainder Beneficiaries breached the "contracts" that they entered into in 1989 by filing the present lawsuit, which alleges failure to diversify the assets of the DPW Trust. Answer and Counterclaims, Counterclaim I. The Remainder Beneficiaries contend that this counterclaim fails to state a claim upon which relief can be granted, because the court need not accept as true SNB's legal conclusion that the consent of the Remainder Beneficiaries to retention of the closely-held family investments amounted to a waiver of SNB's fiduciary duty to diversify the DPW Trust's investment portfolio. Rather, the Remainder Beneficiaries argue that the purported "contracts" only authorize SNB to maintain the closely-held family investments in the Trust without responsibility for doing so; those contracts simply do not state that the Remainder Beneficiaries are waiving SNB's fiduciary duty to diversify the balance of the DPW Trust's investment portfolio. Thus, the Remainder Beneficiaries contend that filing their Complaint, which the Remainder Beneficiaries contend makes no allegation

that SNB breached its fiduciary duty by retaining the closely-held family investments, cannot, as a matter of law, amount to a breach of contract.

SNB, however, contends that it has alleged each and every element of its claim of breach of contract, including the existence of a contract, breach of that contract, and damages from the breach. Whether or not the acts complained of ultimately constitute a breach of contract, SNB contends, is a question for the factfinder, not an issue to be determined on a motion to dismiss for failure to state a claim upon which relief can be granted.

In reply, the Remainder Beneficiaries argue that SNB's contentions about what the "contracts" say is so at odds with what the documents purportedly embodying those contracts actually say that the court must reject SNB's contentions as conclusory allegations of law and unwarranted inferences. Therefore, the Remainder Beneficiaries reiterate their contention that SNB's breach-of-contract claim fails to state a claim upon which relief can be granted.

### 2. Pleading of the claim

■ To prove a breach-of-contract claim under Iowa law, the claimant must prove the following elements: (1) the existence of a contract between the parties; (2) the terms and conditions of the contract; (3) that the claimant performed all the terms and conditions required under the contract; (4) that the defendant breached the contract in some particular way; and (5) that the claimant suffered damages as a result of the breach. *See, e.g., Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). The court agrees that SNB has pleaded these elements. First, SNB alleges the existence of a contract or contracts, *see id.* (first element), by alleging that copies of the September and December 1989 letters

signed by the Remainder Beneficiaries constituted "contracts." *See* Answer and Counterclaims, ¶¶ 6–7. Second, SNB alleges the terms of the contracts, *see Molo Oil*, 578 N.W.2d at 224 (second element), by alleging that those "contracts" authorized SNB "not to diversify the DPW Trust's investment portfolio and [to] keep the investments in closely-held family corporations." *See* Answer and Counterclaims, ¶¶ 6–7 & 12. Third, SNB alleges that it performed the terms of the contract, *see Molo Oil*, 578 N.W.2d at 224 (third element), because SNB alleges that it performed according to the terms of the "contracts" by retaining the investments in the closely-held family corporations. *See* Answer and Counterclaims, ¶ 13. Fourth, SNB alleges that the Remainder Beneficiaries breached the "contracts," *see Molo Oil*, 578 N.W.2d at 224 (fourth element), by filing the present lawsuit. *See* Answer and Counterclaims, ¶ 14. Finally, SNB alleges that it has suffered damages from the breach, *see Molo Oil*, 578 N.W.2d at 224 (last element), by alleging damages from the breach in the form of cost, expense, and other damages in defending the lawsuit. *See* Answer and Counterclaims, ¶ 15.

■ Again, the court finds that the Remainder Beneficiaries are now estopped to assert any claim for breach of fiduciary duty premised on SNB's holding of the closely-held family corporation investments in the DPW Trust. Therefore, the Remainder Beneficiaries' filing of the present lawsuit cannot be a breach of the terms of a contract authorizing SNB to hold those assets, and one portion of SNB's breach-of-contract claim thus fails as a matter of law. However, the question is, does the remaining allegation of breach, concerning breach of an authorization not to diversify the assets of the DPW Trust,

state a claim? The court will consider that question in more detail below.

■ The Remainder Beneficiaries contend that allegation of the elements of the claim is not the end of the matter, because the allegations are so at odds with the documents purportedly embodying the contract that the claim fails as a matter of law. The court notes, first, that it may properly consider the documents purportedly embodying the "contracts" at issue here, because "[SNB's] claims are based solely on the interpretation of the documents [submitted] and the parties do not dispute the actual contents of the documents." *Jenisio,* 187 F.3d at 972 n. 3 (citing *Silver,* 105 F.3d at 397). Next, the court agrees with the Remainder Beneficiaries that it must "reject conclusory allegations of law and unwarranted inferences," and instead consider whether the *facts* alleged in SNB's Answer and Counterclaims, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver,* 105 F.3d at 397; *Westcott,* 901 F.2d at 1488. Moreover, the question on a motion to dismiss for failure to state a claim is not just whether or not the claimant has pleaded the elements of its claim, but whether there is some "insuperable bar to relief." *Frey,* 44 F.3d at 671; *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim). The absence of any contract language reasonably supporting a claimant's allegations of the terms of the contract would, in the court's view, present such an "insuperable bar."

The court cannot find that any portion of the September 15, 1989, letter to remainder beneficiaries James Oliver Williams and John Franklin Williams, *see* Answer and Counterclaims, Exhibits C and D, or any portion of the similar December 19, 1989, letter to remainder beneficiary Peter Martin Williams, *see id.,* Exhibit E, reasonably—or even remotely—"authoriz[ed] and direct[ed] SNB *not to diversify the DPW Trust's investment portfolio."* Answer and Counterclaims, Counterclaim I, ¶ 12 (emphasis added).[6] The court finds that, as a matter of law, all that the letters authorized SNB to do was "to hold these [closely-held family corporation investment] assets [in the DPW Trust], and to relieve the Security National Bank of any responsibility for them." *See* Answer and Counterclaims, Exhibits C, D, and E. The purported agreements are completely silent on SNB's duty to diversify any other portion of the DPW Trust's assets. SNB's contrary allegations as to the construction of the purported contracts rely upon unwarranted inferences from the language of the purported contracts and/or legal conclusions about the construction of the contracts. *See Silver,* 105 F.3d at 397 (the court may disregard unwarranted inferences or legal conclusions in the claimant's pleadings); *Westcott,* 901 F.2d at 1488 (same). SNB has not directed the court to any other documents purportedly constituting an authorization or direction to SNB *not* to diversify the assets of the DPW Trust apart from the assets of the closely-held family corporations.

Therefore, the absence of any contract language supporting the alleged terms of the contracts authorizing SNB not to diversify the assets of the DPW Trust and

---

6. This court recently summarized the Iowa rules of contract interpretation and construction as follows. *See Central States Indus. Supply, Inc. v. McCullough,* 279 F.Supp.2d 1005, 1031–33 (N.D.Iowa 2003). Suffice it to say here that "interpretation," that is, determining the reasonably possible meaning of terms of a contract, is a question of law, unless the meaning turns on extrinsic facts, and "construction," that is, determining the legal effect of contractual terms, is "always a question of law." *See id.* (citing *Grinnell Select Ins. Co. v. Continental Western Ins. Co.,* 639 N.W.2d 31, 33 (Iowa 2002)).

the impossibility of breaching non-existent terms of the contracts in this case stand as "insuperable bar[s] to relief" on SNB's breach-of-contract claims, which warrant dismissal of the breach-of-contract claim for failure to state a claim upon which relief can be granted. *Frey,* 44 F.3d at 671; *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

### D. Fraud

#### 1. Arguments of the parties

SNB's Counterclaim II alleges "fraud," specifically, that the Remainder Beneficiaries "intentionally and fraudulently induced SNB to enter into the contracts, to not further diversify the DPW Trust's investment portfolio, and to keep the investments in the closely-held family corporations by making fraudulent representations via Co–Trustee John Pritchard, and by executing the contracts." Answer and Counterclaims, Counterclaim II, ¶ 17. The Remainder Beneficiaries argue that this counterclaim also fails to state a claim upon which relief can be granted, because the purported contracts simply do not authorize SNB not to diversify or not to "further" diversify the DPW Trust's investment portfolio. In addition, they argue that SNB has failed to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. SNB, again, argues that it has pleaded all of the elements of its "fraud" claim, and indeed, has done so with the particularity required by Rule 9(b), in that it has alleged the time, place, contents, and identities related to the alleged misrepresentations.

#### 2. Pleading of the claim

■ As the Iowa Supreme Court recently explained, to establish a claim at law for damages for fraudulent misrepresentation, "a plaintiff must prove (1) defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of plaintiff's damages, and (8) the amount of damages." *Gibson v. ITT Hartford Ins. Co.,* 621 N.W.2d 388, 400 (Iowa 2001). The court, once again, agrees with SNB that it has pleaded each of these elements. *See* Answer and Counterclaims, Counterclaim II. However, it is clear that, once again, mere pleading of the elements is not enough, where there is nevertheless some "insuperable bar to relief" on the claim as pleaded. *Frey,* 44 F.3d at 671; *accord Parnes,* 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

■ The first "insuperable bar" is that, once again, the documents upon which SNB relies as embodying the alleged misrepresentation, the September and December 1989 letters or "contracts," demonstrate that *no representation was ever made that SNB should not diversify or further diversify the assets of the DPW Trust. See* Answer and Counterclaims, Exhibits C, D, and E. However, SNB also relies upon "fraudulent representations via Co–Trustee John Pritchard." Answer and Counterclaims, Counterclaim II, ¶ 17. The only "representations via Co–Trustee John Pritchard" identified in the "General Allegations" to the counterclaims are allegedly in Exhibits A and B. Exhibit A is the letter dated August 3, 1989, to co-trustee John Pritchard, which is quoted in full *supra* in note *3.* However, that letter, like the September and December 1989 letters to the Remainder Beneficiaries, is completely silent as to any representation that SNB should not diversify or further diversify

the assets of the DPW Trust. Exhibit B, which is John Pritchard's August 14, 1989, letter back to the SNB trust officer, likewise contains no such representation, although it does include a representation that "[o]ur families *do* wish to retain the 'closely-held family investments.'" Answer and Counterclaims, Exhibit B (emphasis in the original). Thus, to the extent that SNB's fraud claim relies on a purported representation that SNB was not to diversify the assets of the DPW Trust, that claim fails to state a claim upon which relief can be granted, because there is an insuperable bar to proof of the first element of the claim. *See Gibson*, 621 N.W.2d at 400 (first element is that a representation was made by the defendant).

The September and December 1989 letters or "contracts"—and indeed, the representations of John Pritchard in Exhibits A and B—do reasonably include representations that SNB should hold the assets of the closely-held family corporations as assets of the DPW Trust. However, there is also an "insuperable bar" to a fraud claim based on such representations, because there is absolutely no basis for allegations of falsity, knowledge of falsity, intent to deceive, or damages as to those representations, *see id.* (second, fourth, fifth elements, seventh, and eighth elements), where the Remainder Beneficiaries apparently never intended to claim, do not now claim, and are estopped to claim, that they have any objection to SNB holding the closely-held family investments in the DPW Trust. Thus, this portion of SNB's fraud claim likewise fails to state a claim upon which relief can be granted.

Under the circumstances, the court finds it unnecessary to consider the Remainder Beneficiaries' contention that SNB has otherwise failed to plead fraud with the particularity required by Rule 9(b). SNB's fraud claim will be dismissed for failure to state a claim upon which relief can be granted.

### E. Conspiracy

■ SNB's final counterclaim is that the Remainder Beneficiaries "either directly conspired with the other Counterclaim Defendants to fraudulently mis-state Counterclaim Defendants' true wishes and intentions with respect to the DPW Trust's investment portfolio, or knew and acquiesced in, or actively participated in, the other Counterclaim Defendants' perpetration of a fraud on SNB by intentionally failing to disclose material facts and making materially false representations regarding the Counterclaim Defendants' true intentions with respect to the DPW Trust's investment portfolio." Answer and Counterclaims, Counterclaim III. The Remainder Beneficiaries have also moved to dismiss this counter claim for failure to state a claim upon which relief can be granted.

This court recently summarized Iowa law regarding civil conspiracies as follows:

A recognized aspect of Iowa law is the legal theory of civil liability for conspiracy to commit a wrongful act. *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 232–33 (Iowa 1977); *Cora v. Strock*, 441 N.W.2d 392, 394 (Iowa Ct.App.1989). However, the Iowa Supreme Court has repeatedly "recognized that '[c]ivil conspiracy is not in itself actionable; rather it is the acts causing injury undertaken in furtherance of the conspiracy which give rise to the action.'" *Robert's River Rides, Inc. v. Steamboat Dev. Corp.*, 520 N.W.2d 294, 302 (Iowa 1994) (quoting *Basic Chems., Inc.*, 251 N.W.2d at 233, and *Lindaman v. Bode*, 478 N.W.2d 312, 317 (Iowa Ct.App.1991)). The Iowa Supreme Court explained the nature of civil conspiracy in *Basic Chemicals* as follows:

A conspiracy is a combination of two or more persons by concerted action

to accomplish an unlawful purpose, or to accomplish by unlawful means some purpose not in itself unlawful. It may be proven by substantial evidence.

*Basic Chems., Inc.,* 251 N.W.2d at 232; *accord Cora,* 441 N.W.2d at 394 (quoting *Basic Chemicals*). To put it another way, civil conspiracy requires "mutual mental action coupled with an intent to commit the act which results in injury." *Basic Chems., Inc.,* 251 N.W.2d at 233. Thus, "[t]he principal element of conspiracy is an agreement or understanding between two or more persons to effect a wrong against or injury upon another." *Id.; accord Locksley v. Anesthesiologists of Cedar Rapids, P.C.,* 333 N.W.2d 451, 456 (Iowa 1983).

*Wright v. Brooke Group, Ltd.,* 114 F.Supp.2d 797, 836 (N.D.Iowa 2000). Because "civil conspiracy" is not itself actionable, and the underlying counterclaims of wrongful conduct that the Remainder Beneficiaries allegedly conspired to commit fail as a matter of law, SNB's counterclaim of conspiracy also fails to state a claim upon which relief can be granted.

### III. CONCLUSION

Upon the foregoing, the Remainder Beneficiaries' July 28, 2003, Motion To Dismiss Counterclaims Asserted By Security National Bank (docket no. 20) is **granted**. SNB's counterclaims are **dismissed** in their entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state claims upon which relief can be granted. This conclusion is, in part, based upon the Remainder Beneficiaries' express narrowing of their breach-of-fiduciary-duty claim in their motion to dismiss; therefore, the Remainder Beneficiaries are now **estopped** to assert any claim for breach of fiduciary duty premised on SNB's holding of the closely-held family corporation investments in the DPW Trust.

**IT IS SO ORDERED.**